WILLS (§ 524*)—CONSTRUCTION—BENEFICIARIES—"HEIRS AT LAW."

> In a will directing executors to invest and keep invested a sum of money, pay the income to a nephew of testator during life, and on his death divide the trust fund among the nephew's heirs at law, the remaindermen take direct from the testator; the identity of the "heirs at law" being determined on the nephew's death, and including those who answer to that description in its strict legal meaning.

> [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*

> For other definitions, see Words and Phrases, vol. 4, p. 3265.]

Judicial settlement of the accounts of Edwin R. Fay and others, as trustees under the last will of James C. Reed. Decree entered.

Taber & Brainard, of Auburn, for trustees.
Wm. S. Elder, of Auburn, special guardian, for infant.

WOODIN, S. The testator died in June, 1901, leaving a will and three codicils, which were thereafter admitted to probate in this court. This proceeding is an accounting by the trustees, and relates solely to

---

a trust fund of $3,000 created in the second clause of the second codicil, which reads as follows:

"Second. I give to my executors the sum of three thousand dollars to invest and keep invested and pay the income thereon to my nephew Nelson Perry during his lifetime and on his death to divide the three thousand dollars among his, said Nelson Perry's heirs at law, but this legacy shall not be increased by or participate in the division of the residue of my estate."

The said Nelson Perry has recently died, and the trustees are ready to distribute the trust fund to the persons entitled thereto. A controversy has arisen over the meaning of the words "heirs at law" in this clause, and is the sole question presented. Nelson Perry left as his nearest relatives numerous first cousins, paternal and maternal, and also descendants of deceased first cousins. It is contended by the trustees that the fund, being personal property, should be distributed to Nelson Perry's next of kin, namely, the first cousins, excluding the representatives of deceased cousins. Another point is raised by them which is hereafter referred to.

The special guardian, representing one of the descendants of a deceased first cousin, urges that the fund should be distributed, per stirpes, to Nelson Perry's heirs at law, giving the expression its strict legal meaning, thereby including the representatives of deceased cousins. He bases his contention also upon the further ground that, the testator having died in 1901, the statute of distributions then in force, to wit, section 2732, subd. 12, of the Code, as amended by chapter 319 of the Laws of 1898, permitting representation among collaterals, applies, as the act of May 18, 1905, amending said section, prohibiting representation after brothers' and sisters' descendants, expressly provides:

"This act shall not apply to an estate of a decedent who shall have died prior to the time this act shall take effect."

The court is concerned with only one question: What persons or classes of persons did the testator embrace in the term "Nelson Perry's heirs at law"? The fundamental rule underlying the construction of a will is that the intent of the testator shall control. If the intent· is plainly expressed, no resort need be made to rules of construction. They are useful only where the meaning is ambiguous, and the courts will not indulge in mere conjecture in construing the testator's language. The primary meaning of the words "heirs at law" is the persons related to one by blood, who would take his real estate if he died intestate, and the words embrace no one not thus related.

The cases are numerous where the courts have held that the word "heirs," or the expression "heirs at law," when used in connection with the disposition of personal property, means next of kin; and so frequently has this construction been given to these words' that, at first blush, it might seem as though it had become a settled rule of construction, and that, whenever a bequest of personal property was made to heirs or heirs at law, it should be interpreted to mean next of kin. But in all the cases which I have examined, in which this construction has been given to the word "heirs," the courts have first

sought to ascertain the intent of the testator, and, when the conclusion has been reached that the word "heirs" should be taken to mean next of kin, it is because the court has found such to have been the intention of the testator as gathered from the whole will and surrounding circumstances, and not because personal property in case of intestacy is distributable to next of kin only. A brief reference to a few of the cases cited by counsel, in which the courts have construed the meaning of the word "heirs," will serve to illustrate this view.

In Lawton v. Corlies, 127 N. Y. 100, 27 N. E. 847, the will provided:

"I order and direct that my estate be divided among my heirs at law in accordance with the laws of the state of New York applicable to persons who die intestate."

It seemed clear to the court in that case that the direction to divide in accordance with the laws of the state of New York plainly indicated the intention of the testator to give his personal estate to his next of kin and his real estate to his heirs at law; the court saying:

"While technical words in a will, when uncontrolled by the context, are presumed to have been used in their technical sense, still the context may overcome the presumption when it appears thereby, and from extraneous facts * * * that the testator used the words in their common and popular sense."

In Woodward v. James, 115 N. Y. 346, 22 N. E. 150, the testator gave to his widow the use of one-half of his estate. He gave to his "legal heirs" the remainder of the income from his estate during the life of his wife, and then further devised and bequeathed to his "legal heirs" the reversion and ownership of the estate after the death of his wife. He further provided a forfeiture in case any of his legal heirs should interfere with the widow in the enjoyment of her interest in the estate, and provided in such an event that such heir should be excluded from sharing in the estate, and the share which otherwise would have gone to him be "divided among the remaining heirs according to law." The next of kin and heirs at law were not coextensive, and it became necessary for the court to determine whom the testator meant by "legal heirs." The court concluded, after taking into consideration the entire will, the use of the word "legal," and the provision for division of a forfeited share "according to law," indicated the sense in which the testator used the phrase, and accordingly held that the personal estate should be distributed to the next of kin.

In Matter of Fidelity Trust & Guarantee Co., 57 App. Div. 532, 68 N. Y. Supp. 257, the court construed the words "my heirs," used with reference to the disposition of a certain trust fund, to mean next of kin, basing its interpretation upon the fact that the testator did not employ legal terms, and especially the word "heirs," with legal discrimination; that there were many bequests of personal property to "heirs," the expression "next of kin" nowhere appearing, and there was no bequest or devise of the residue of his property, and the bulk of his estate, consisting of both real and personal property, was left to be distributed among his next of kin or descend to his heirs at law

pursuant to the statutes of distribution and descent, according to the character of the property.

Other cases might be referred to in which the courts have construed the word "heirs" to mean next of kin, when used in connection with the disposition of personal property; but all of these cases recognize the principle that, where the context of the will shows that the testator used the word "heirs," or the expression "heirs at law" or "next of kin," in a sense *other* than the primary legal sense, the actual intention must prevail over the use of the technical language.

The case of Armstrong v. Galusha, 43 App. Div. 248, 60 N. Y. Supp. 1, is further illustrative of this principle. In that case, the testator, in the eighteenth clause of his will, directed his executors to pay the remainder of his estate to his "heirs" in portions according to the laws and statutes of the state of New York, the same as if he died intestate. The testator's relatives were nephews and nieces and grandnephews and grandnieces. The court held that, after considering the entire will and the extraneous facts disclosed by the record, it was evident that the testator did not use the word "heirs" to designate next of kin, but intended it should be given its strict technical significance, and that, therefore, the grandnephews and grandnieces of the testator took per stirpes under the statute of descent.

The case of Tillman v. Davis, 95 N. Y. 17, 47 Am. Rep. 1, is frequently cited as laying down the rule that a gift of personal property to "heirs" means next of kin; but the precise question determined by the court in that case was that a bequest of personal property to the heirs of another person did not entitle the widow of that person to share therein.

The foregoing cases, and others cited by counsel, indicate that the courts have uniformly sought to discover the intent of the testator, and in no case is the rule promulgated arbitrarily that a gift of personal estate to heirs means next of kin. With this principle in mind we can approach the question in this case and ask: What persons or class of persons did the testator designate as the beneficiaries under the clause in question by the words "to his, said Nelson Perry's, heirs at law?" If the words "heirs at law" are given their strict legal meaning, they include all who would inherit his real property in case of his death intestate.

There is no question but that the testator had a right to direct that this trust fund be distributed to such persons or class of persons as he saw fit, regardless of the statutes of distribution or descent, or rules of construction, and there would seem to be no reason why we should not assume that the testator used the words "heirs at law" in their strict legal sense, unless there is something in the rest of the will which renders such construction inconsistent therewith, and that, instead of meaning "heirs at law," as he plainly says, he meant next of kin, which he did not in fact say. There is nothing in the clause in question, or in the entire will and codicils, to negative the presumption that the words "heirs at law" were used in their strict technical sense. This view is strengthened when we consider that the will and codicils were drawn by eminent counsel, who knew and understood

the legal distinction between heirs at law and next of kin. A perusal of the same reveals the precision and fitness with which legal terms are employed. The expressions, "personal property," "real property," "legatee," "devisee," "heirs," "next of kin," etc., are, throughout the instruments, used with discrimination. It is also significant, as indicating a purpose of the testator to embrace his remote blood relatives in the distribution of his property, to note that the will disposes of practically his entire estate to his numerous nephews and nieces and grandnephews and grandnieces in various amounts, thereby including relatives who would not inherit his personal estate as next of kin under the statute as it was at the time the will was drawn.

When the second codicil, which contains the clause creating the trust fund in question, was drawn, the statute of distribution had been. amended by Laws 1898, c. 319, so that representation was permitted among collaterals in the same manner as allowed by law with reference to real estate. This amendment continued to be the law until May 18, 1905, when it was again amended to read:

"No representation shall be admitted among collaterals after brothers' and sisters' descendants. This act shall not apply to the estate of a decedent who shall have died prior to the time this act shall take effect."

It will be thus seen that at the time the second codicil was drawn the distinction between heirs at law and next of kin had, in a large measure, been extinguished, but not altogether. Cases may arise where the next of kin outnumber the heirs at law, although the reverse is usually the case. For instance, Nelson Perry might have been survived by nephews and nieces and uncles and aunts. In that event the nephews and nieces and uncles and aunts would have been his next of kin, sharing per capita his personal estate, while the nephews and nieces alone would have inherited his real estate as his heirs at law. Just this situation may have been in the testator's and his counsel's mind when this codicil was drawn, and the expression "heirs at law," therefore, used advisedly. The testator's purpose may be frustrated by construing the words "heirs at law" to mean "next of kin." As is stated in Armstrong v. Galusha, supra:

"Courts will not substitute 'next of kin' for 'heirs' in a testator's will, and thereby create an entirely different class of persons as legatees, unless it appear that such substitution is necessary in order to make operative and effective his intent."

The court in that case further says:

"In the case at bar, the testator designated the persons who should take the residuum of his estate by the use of the words 'my heirs.' If the fact that his entire estate consisted entirely of personal property be eliminated, and the word 'heirs' is given its strict legal meaning, or its common and popular meaning, the nephews and nieces and grandnephews and grandnieces of the testator are all included in the designation. From the single circumstance that the estate is entirely personal, the learned counsel for the respondent asks the court to substitute for the word 'heirs' the words 'next of kin,' and thus exclude the grandnephews and grandnieces from sharing in his estate."

This seems to be precisely the case at bar. If it were conceded that the testator meant to give this trust fund to Nelson Perry's heirs at

law, he could not have more plainly expressed his desire. As already adverted to, it cannot be claimed that the words "heirs at law" were used carelessly or in ignorance of their true legal meaning. A glance at the entire will negatives this.

The conclusion being reached that the fund should be distributed to the heirs at law of Nelson Perry renders it unnecessary to consider the point raised by the special guardian that, should it be determined that distribution should be made to the next of kin, then, in that case, the law in effect at the time of the testator's death, namely, Laws 1898, c. 319, admitting representation among collaterals, should control, in view of the saving clause contained in the repealing act of 1905, already referred to.

As to the persons constituting the class of Nelson Perry's heirs at law, it includes all who would inherit under any circumstances, had he died intestate seised of real estate. This includes the first cousins and the descendants of deceased cousins, and it seems to be conceded by counsel that distribution should be per stirpes. This rule is followed in the case of a devise to "heirs," whether it be to one's own heirs or the heirs of a third person, as this designates not only the persons who are to take, but also the manner and proportion in which they take, and that, when there are no words to control, from such language in the will of the testator the law will presume his intention to be that they shall take as heirs would take by the rules of descent. Daggett v. Slack, 8 Metc. (Mass.) 450. This rule was followed in Armstrong v. Galusha, supra.

The point is raised by counsel for trustees that, if distribution is to be made to Nelson Perry's heirs at law, it should be in accordance with section 88 of the Decedent Estate Law (Consol. Laws 1909, c. 13), which provides that, if the inheritance shall come to the intestate on the part of his mother, it shall descend to her brothers and sisters and their descendants, inasmuch as this trust fund comes from the testator, who was a brother of Nelson Perry's mother. This, however, is not tenable. The section referred to relates to real property of which the decedent died seised. Section 80, subd. 2, of the same law, reads as follows:

"The expressions 'where the inheritance shall have come to the intestate on the part of the father' or 'mother,' as the case may be, include every case where the inheritance shall have come to the intestate by devise, gift or descent from the parent referred to, or from any relative of the blood of such parent."

Nelson Perry never had any vested interest in this trust fund. The legal title thereof was in the trustees; his interest attaching only to the income, which terminated at his death, and the remaindermen (his heirs at law) take as purchasers under the will of the testator and not through or from Nelson Perry. The case of Knowlton v. Atkins, 134 N. Y. 313, 31 N. E. 914, does not support this contention. That case deals with the disposition of real estate, the title to which was vested in the intestates, and the heirs of such intestates were determined according to the statute. In the case at bar there is no inheriting through intestacy. The heirs at law of Nelson Perry take direct

from the testator, their identity being determined upon Nelson Perry's death, and all who answer that description, under any contingency, are in that class.

A decree may be entered upon two days' notice in accordance with the foregoing.

Decreed accordingly.