SAM SPENCER et al., Complainants-Appellants, v. MRS. STANLEY STANTON et al., Defendants-Appellees. —333 S. W. (2d) 225.

Middle Section, Nashville.   December 4, 1959.

Certiorari Denied by Supreme Court February 5, 1960.

Clark Leech, Dickson, for appellants.

Robert S. Clement, Dickson, Val Sanford, Nashville, for appellees.

CARNEY, J.   This litigation involves the title to two tracts of land in Dickson County, Tennessee, in which Lipe Henslee, now deceased, held a life estate under the will of his father, Pitt Henslee.   The remainder interest in said tracts was vested under the will in the "heirs" of Lipe Henslee.

Pitt Henslee died in June, 1923, leaving surviving him one son, Lipe Henslee, and a widow, Susie Henslee, who died February 14, 1956.   Lipe Henslee was the only child of Pitt Henslee and Susie Henslee and he died testate on

January 21, 1958. Lipe Henslee left no children, natural or adopted, and his property was devised to non-relatives and is not involved in this litigation.

The nearest relatives of Lipe Henslee on his mother's side are the children and grandchildren of six deceased brothers and sisters of his mother, Mrs. Susie Henslee. Complainants-appellants, Sam Spencer, John Spencer, Edgar E. Spencer, William A. Spencer and Gilbert F. Tidwell, are all related to Lipe Henslee on his mother's side.

The nearest relatives of Lipe Henslee on his father's side are the three defendants, appellees, Mrs. Stanley Stanton, Mrs. J. M. Wynns and Mrs. Lester Rogers, half-sisters of Pitt Henslee, deceased.

The remaining children and grandchildren of the deceased brothers and sisters of Mrs. Susie Henslee were made parties defendant to the complainants' original bill. Some suffered a pro confesso to be entered against them and others answered and adopted the allegations of the complainants as to ownership of the lands in controversy.

The complainants' original bill alleged ownership in said two tracts of land and sought a sale for partition and division. By consent of all the parties the real estate has been sold and the sale price of $49,000 paid into the registry of the Chancery Court awaiting final determination of the true owners. The Chancellor held "that said two tracts of land, or the proceeds of the sale thereof, pass as ancestral property under section 31-101, Sub-sections (3) (d) Tennessee Code Annotated, and the will of Pitt Henslee, to his three half sisters, Mrs. Stanley Stanton, Mrs. J. M. Wynns, and Mrs. Lester Rogers, in equal interests, they being the heirs of Lipe Henslee, on

his father's side, and that the Complainant, and other defendants, have no interest in said property."

Complainants' four assignments of error all assail the correctness of the Chancellor's holding that they did not receive any interest in the property under the will of Pitt Henslee. There is no dispute as to the facts; only a dispute as to the proper interpretation of sections seven and fifteen of the will of Pitt Henslee.

We quote said two sections as follows:

"Seventh: I give and bequeath to my son, Lipe Henslee, and any other children I may leave at my death the portion of the property known as the Goat Ranch lying on the north of the Yellow Creek Pike for the terms of their natural life and at their death to their heirs."

"Fifteenth. I further direct and instruct the executors or the guardian herein named to invest five thousand ($5000.00) dollars out of the money going to my children in farm property somewhere in Dickson County, taking a deed thereto giving my said children a life estate only in same and to their heirs at their death."

The Goat Ranch property referred to in Item Seven of the will was purchased by Pitt Henslee by warranty deed on March 7, 1910. The second tract of land involved in this litigation known as the Golf Club property was purchased by S. G. Robertson, trustee, under the terms of Item Fifteen of the will and conveyed to Lipe Henslee for life by deed of Robertson, trustee, of date May 18, 1925. Both the granting clause and the habendum clause from Robertson, trustee, to Lipe Henslee conveyed the prop-

erty to Lipe Henslee for the term of his natural life and then to his heirs. The deed also recites that the conveyance was made by Robertson as trustee with the intention **of carrying out the terms of Pitt Henslee's will.**

The Rule in Shelley's Case has been abolished by statute, T. C. A. sec. 64-103, as follows:

"64-103. Rule in Shelley's Case abolished.—Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs or heirs of body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them. (Code 1858, sec. 2008 (deriv. Acts 1851-1852, ch. 91, sec. 1); Shan., sec. 3674; Code 1932, sec. 7600.)"

Thus it clearly appears that under the will of Pitt Henslee, Lipe Henslee, his only son, took a life estate in both tracts of land and that his "heirs" took a remainder in fee as purchasers.

We think the Chancellor very aptly crystallized the question by saying, "In order to determine the issue involved in this proceeding, it is necessary to determine who are the 'heirs' of said Lipe Henslee as that word is used in the will of Pitt Henslee."

Appellees insisted and the Chancellor agreed, correctly we think, that the meaning of the word "heirs" as used in a will is dependent upon the type of property involved.

In the case of Swanson v. Swanson, 1852, 32 Tenn. 446, a bill had been filed in the Chancery Court to settle and distribute the estate of James Swanson, Sr. who had died

intestate leaving a large amount of personal and real property. He left a widow and several natural sons and daughters who had been born out of wedlock. Two of these children had been legitimated by a private act of the Legislature and two of the children had been legitimated by a court order under a general act of the legislature. The private act recited that the two children, naming them, were legitimate and "they are hereby enabled to inherit in the same manner as if they had been born in lawful wedlock."

The general statute under which the other two children were legitimated by court decree recited that the court was authorized to declare "that said person, made legitimate as aforesaid, has become heir or joint heir of the person petitioning."

In the Swanson case the right of the legitimated children to take the real estate was not seriously questioned but it was seriously contended that under neither of the statutes were they entitled to receive personal property as "heirs." Our Tennessee Supreme Court in upholding their right to share in both the real and personal property of the deceased made this statement:

"But this consideration aside, we take it to be a correct principle that the same rule of construction applicable, in this respect, to a will or other instrument, should be applied in the construction of a statute, whether public or private. And, with respect to a will, it is well settled that when the word 'heirs' is used to denote succession or substitution, it may be understood to mean such persons as would legally succeed to the property according to its nature and quality. Thus, a legacy of personal property to A,

and in case of his death before the testator, to his heirs, was decreed to belong to the next of kin of A, who died before the testator. 2 Williams on Ex. 950. Such is the settled rule with respect to the personalty, whenever it clearly appears that the testator has employed the term 'heir,' not in its strict and proper acceptation, but in a lax sense, as descriptive of the person appointed by law to succeed to property of this description. 2 Jar. on Wills, 22. So, under the description of personal estate, the freehold has been held to pass, where it was clear, from the face of the will, that the testator meant, not what is technically understood by the words used, but the real property over which he had an absolute power of disposition. 2 Williams on Ex. 925.''

In the case of Alexander v. Wallace, 1881, 76 Tenn. 569, the will provided as follows:

''I direct that the remainder of my estate, both real and personal, be divided among my heirs according to the laws of the State of Tennessee now in force, none preferred and none discriminated against.''

The Supreme Court, in an opinion by Judge Cooper, held that the heirs of the testator as provided by the statute of descent would take the land and that his next of kin would take the personal property as prescribed by the statute of distribution.

■ ''The legal meaning of the word heirs is the class of persons upon whom descent is cast by the statutes of descent. But, as used in wills, the word is flexible according to the nature of the property given. When applied to real estate, the word will be given its legal meaning;

when used as to personalty, it will be held to mean next of kin." Phillips' Pritchard on Wills, Section 435, page 382.

In the case of Forrest v. Porch, 1898, 100 Tenn. 391, 45 S. W. 676, the testator had devised certain lands to his widow for her life and provided "to have and to hold as long as she lives. At her death said land is to be divided between my heirs at law." It was held that the will created a contingent remainder and that the heirs of the testator were to be determined as of the date of the death of the widow according to the statute of descent. In holding that the heirs would take per stirpes and not per capita our court said:

"* * * When the testator directed that the land should be divided among his heirs at law, he meant that the persons falling within the designation should take as heirs at law would take. The phrase 'heirs at law' indicates who shall take, and how they shall take. 'Heirs at law' means the same as 'heirs general.' They are the kindred by blood of a deceased intestate, who inherit his land,—those upon whom the law of descent casts his title. Such persons take the land by operation of that law, and according to it. They and their respective interests are ascertained and defined by the same law. The testator resided in Tennessee, the land devised is located here, and the will is to be construed with reference to our laws. Consequently the remaindermen designated in the will as the testator's heirs at law, must be held to be those persons who in the absence of the will would inherit the land at the death of the life tenant, under the laws of descent in this state; and their respective interests must be determined at that

time by the same laws. The tesator did not say, in so many words, that he intended those interests to be determined by those laws. It was not essential that such an intention be so expressed. It is necessarily inferred, in the absence of a contrary direction. To entitle or require beneficiaries described as heirs at law of a resident of this state to take his land, located here, otherwise than in accordance with our laws of descent, the variation therefrom must be distinctly authorized by the language employed. No departure is authorized by the language of this will, and none can be made.''

We find nothing in the will of Pitt Henslee to indicate that he intended the interest of the heirs of Lipe Henslee to be determined in any other manner than by the statute of descent.

Therefore, in order to determine who are the heirs of Lipe Henslee and the interest they take in said real estate it is necessary to look to Section 31-101 to determine who would have inherited the real estate in question upon the death of Lipe Henslee if he had owned the same in fee simple instead of only owning a life estate.

For convenience we quote Section 31-101 in its entirety:

"31-101. General rules of descent.—The land of an intestate owner shall be inherited in the following manner by his lineal descendants, collateral kindred, or ascendants:

"(1) Regardless of source of title. Without reference to the source of the intestate's title—

"(a) By all the sons and daughters of the deceased, to be divided among them equally. And if

any child of said intestate shall have died in his lifetime, his lineal descendants shall represent their parent, and be entitled to the same portion of the estate of the deceased as their parent would have been entitled to if living.

"(b) If there be no issue, nor brothers or sisters nor their issue, and either parent be living, then by such parent.

"(2) Estate acquired by intestate who died without issue. If the estate was acquired by the intestate, and he died without issue, his land shall be inherited—

"(a) By his brothers and sisters of the whole and half blood, born before his death or afterwards, to be divided among them equally. And if any such brother or sister died in the intestate's lifetime, leaving issue, such issue shall represent their deceased parent, and be entitled to the same part of the estate of the uncle or aunt as their father or mother would have been entitled to if living.

"(b) In default of brothers and sisters and their issue, the land shall be inherited by the father and mother of the intestate as tenants in common.

"(c) If both parents be dead, in equal moieties by the heirs of the father and mother in equal degree, or representing those in equal degree of relationship to the intestate, but if such heirs or those they represent do not stand in equal degree of relationship to the intestate, then the heirs nearest in blood or representing those who are nearest in blood to the intestate, shall take in preference to others more remote.

"(3) Land coming from parent or ancestor of parent. Where the land came to the intestate by gift, devise, or descent from a parent, or the ancestor of a parent, and he die without issue—

"(a) If he have brothers or sisters of the paternal line of the half blood, and brothers or sisters of the maternal line also of the half blood, then the land shall be inherited by such brothers and sisters on the part of the parent from whom the estate came, in the same manner as by brothers and sisters of the whole blood, until the line of such parent is exhausted of the half blood, to the exclusion of the other line.

"(b) If he have no brothers or sisters, then it shall be inherited by the parent, if living, from whom or whose ancestors it came, in preference to the other parent.

"(c) If the transmitting parent be dead, the other surviving parent shall take.

"(d) If both parents be dead, then by the heirs of the parent from whom or whose ancestor it came. [Code 1858, sec. 2420 (deriv. Acts 1784 (Apr.), ch. 22, secs. 2, 3, 7; 1784 (Oct.), ch. 10, secs. 2, 3; 1796 (Mar.), ch. 14, sec. 1; 1841-1842, ch. 171, sec. 1); Shan., sec. 4163; mod. Code 1932, sec. 8380.]"

■ The Goat Ranch property was property received by Lipe Henslee from his father and if he had owned the fee simple title instead of only a life estate and had died intestate then unquestionably under Section (3) (d) the land would have been inherited by the heirs of Pitt Henslee. Hence, we hold that the Chancellor correctly held that the Goat Ranch property was ancestral property and

that under the will of Pitt Henslee the defendants are the remaindermen legally entitled to receive said property to the exclusion of the complainants who are the maternal heirs of Lipe Henslee. Beaumont v. Irwin, 1854, 34 Tenn. 291; Latimer v. Rogers, 1859, 40 Tenn. 692.

Of course the Golf Club property was not owned by Pitt Henslee at the time of his death but it was purchased and title vested in accordance with the express provisions of Pitt Henslee. We think that under the doctrine of equitable conversion the Golf Club tract should be considered as having been devised to Lipe Henslee for life under the will of Pitt Henslee just as was the Goat Ranch tract. See Section 457, Phillips' Pritchard on Wills, page 395 and 19 Am. Jur., page 3—Equitable Conversion—Section 3.

Solicitors for appellants insist that to apply subsection (3) of Section 31-101 in the case at bar is in effect to give Lipe Henslee a transmissible interest in the real estate when as a matter of fact he was expressly given only life estate. They insist that the property should be considered acquired property under sub-section (2) because Pitt Henslee acquired it and it is his will which is being construed. With this argument we must respectfully disagree as did the Chancellor.

When Pitt Henslee died in 1923 the title to these two tracts of land became vested for life in Lipe Henslee with the contingent remainder in an unknown group of persons designated as "heirs of Lipe Henslee." Their identities can be ascertained only after the death of Lipe Henslee and only by applying the Tennessee statute of descent, T. C. A. sec. 31-101, under an hypothesis that Lipe Hens-

lee died the owner in fee of the property. The testator required this to be done when he created a contingent remainder in the "heirs" of Lipe Henslee.

From the opinion of Chancellor Marable we quote as follows:

"It is true, as contended by the complainants, that Lipe Henslee had only a life estate in the property involved in this proceeding, and was never vested with a transmissible interest therein, but this is not the controlling question herein, as said property was not inherited from Lipe Henslee, but passed to his heirs at law under his father's will, and our problem here is to ascertain who are Lipe Henslee's heirs at law in order to determine who the testator, Pitt Henslee, intended to take said property in remainder. The testator plainly stated that, upon Lipe Henslee's death, said property would go to the latter's heirs. As heirship is determined upon the basis of intestacy, this Court knows of no way of determining the persons intended by the will to take said property except by ascertaining the persons who by law would have inherited the estate from Lipe Henslee had he died seized of it and intestate.

" 'Although, in the case at bar, the heirs of (the life tenant) do not take from her by inheritance, but take as persons designated by the will; yet we know of no way of determining the persons intended by the will except by ascertaining the persons who by law would have inherited the estate from her if she had died seized of it and intestate.' Lavery v. Egan, 143 Mass. 389, 9 N. E. 747.

" 'Consequently, the remaindermen designated in the will as the tesator's "heirs at law", must be held to be those persons who, in the absence of the will, would inherit the land, at the death of the life tenant, under the laws of descent in this State; and their respective interests must be determined, at that time by the same laws.' Forrest v. Porch, supra.

" 'When a limitation is in favor of the "heirs" of a designated person, or is in other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are those who, under the applicable local law, would succeed to property of the type which is the subject matter of the conveyance if such ancestor died owning the property and intestate at the time when the group is to be ascertained in accordance with the rule stated in Section 308.' 3 Restatement on Property, sec. 305, page 1671.

"The meaning of the word 'heirs' must be determined in this State by our statute of descent, being Section 31-101, T. C. A., and in this case must be held to include only those persons who would be the heirs of Lipe Henslee, under said statute, if he had died intestate as the owner of the lands devised by said will of Pitt Henslee.

"Said statute of descent may be regarded as being divided into three general divisions, as follows: (1) Inheritance regardless of source of title; (2) inheritance where estate acquired by intestate who died without issue; and (3) inheritance where land came from parent or ancestor of parent. The first of said

divisions cannot apply to this case, as Lipe Henslee was survived by no child, brother, sister, or parent. The second division is inapplicable as said lands were not 'acquired' by Lipe Henslee in any sense. The third of said divisions appears to be the only portion of said statute that can, by any reasonable interpretation, be applied to the case here under consideration.

"If the heirs of Lipe Henslee, and the persons intended by Pitt Henslee to take said lands under his will, are to be determined as hereinabove set out, then the only logical conclusion remaining is that said lands came from Lipe Henslee's parent, Pitt Henslee, and that Subsection (3) (d) of Section 31-101, T. C. A., applies and governs the course of the title to said property. That is, under the applicable law, and all of the facts and circumstances of this case, said lands must be considered as ancestral property, and the heirs of Lipe Henslee, with reference to said lands, must be determined under said statutory provision mentioned above. No other reasonable basis appears for the construction of the two items of the will here involved.

"The construction of said portions of the will of Pitt Henslee in controversy in this suit, as hereinabove indicated, is supported by the principle that, in construing wills, that construction will be favored which conforms most nearly to the general laws of inheritance, and which prefer those of the blood of the testator to strangers. Fox v. Fox, 102 Tenn. 77 [50 S. W. 765]; Davis v. Mitchell, 27 Tenn. App. 182 [178 S. W. (2d) 889]; 1 Phillips' Pritchard on Wills, sec. 398a, page 358. Nothing in the will as a whole

conflicts with this principle, or indicates any contrary intention on the part of the testator.''

We have considered the case of Matter of Fay, 77 Misc. 514, 137 N. Y. S. 983, cited and relied upon by solicitor for appellants but do not deem it controlling of the case at bar.

Hence, we feel constrained to hold that His Honor the Chancellor was correct and the assignments of error are respectfully overruled. A decree will be entered in this court affirming the decree of the Chancellor and appellants taxed with the costs of this appeal.

Shriver and Hickerson, JJ., concur.