# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 4, 2001 Session

## RUTHERFORD COUNTY v. MARTHA JORDAN WILSON, ET AL.

**Appeal from the Circuit Court for Rutherford County**
**No. 42603     Don R. Ash, Judge**

---

**No. M2000-01382-COA-R3-CV - Filed February 28, 2002**

---

This appeal involves a dispute over the interpretation of a grant of real property giving a life estate to the grantor's daughter with the remainder to go to the "heirs of her body" and, if at her death there were none, to the grantor's heirs at law. Rutherford County condemned a portion of the property, and the parties dispute apportionment of the condemnation proceeds. The life tenant is still living; therefore, her life estate has not terminated. However, the widow of the life tenant's deceased son claims that she has a one sixth (1/6) interest in the property because her husband owned a vested transmissible interest in the remainder, which passed in part to his widow on his death by intestate succession. The trial court found that Tennessee's statute governing class gifts requires that the son's issue, living at the termination of the life estate, would take his share of the remainder. Therefore, the widow would not be entitled to a portion of the remainder. The widow now appeals to this court. For reasons discussed herein, we affirm the trial court's determination that the widow had no interest in the remainder.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Andrée Sophia Blumstein, William L. Harbison, Nashville, Tennessee, for the appellant, Cathey Baskin.

Larry K. Tolbert, Murfreesboro, Tennessee, for the appellees, Martha Jordan Wilson, Jane Maurice Wilson and Diane Wilson McCord.

### OPINION

This case originated from a condemnation action commenced by Rutherford County, in which it sought to take a portion of property held by Martha Jordan Wilson through a life estate granted to her by her father, Will Jordan. As part of that proceeding Rutherford County named Martha Jordan Wilson, her daughter and her granddaughter. The widow of a deceased son of Martha

Wilson intervened claiming an interest in the property that was the subject of the condemnation petition. She filed a cross-claim for declaratory judgment to ask the court to hold that she was entitled to a one-sixth interest in the life estate property and entitled to a proportionate share of the proceeds. The court denied this motion.

## I. Facts

The parties agree on the facts of this case, and this appeal involves only an application of the law to those facts, which are as follows. In 1942, Will Jordan conveyed by deed a life estate in approximately 145 acres to his daughter Martha Wilson with the remainder to go to the heirs of Martha Wilson's body. Specifically, the deed provides:

> The interest herein conveyed to the said Martha Jordan Wilson is a life estate, in and to the foregoing described property, with the right to take immediate possession thereof, the remainder interest to go to the heirs of her body on her death, in accordance with the laws of descent and distribution; and should the said Martha Jordan Wilson have no children or representatives of children at her death, then the remainder interest shall go to my next of kin as provided by law.

Martha Wilson is still living and is married to James A. Wilson, with whom she has had three children. The first of those children is Jane M. Wilson, who is currently unmarried and has no children. The second is William J. Wilson, who predeceased his parents and left no wife or children. The third child is Kenneth D. Wilson, who also predeceased his parents leaving a widow, Cathey Baskin, and a daughter, Diane Wilson McCord.

The life estate property remained intact until Rutherford County selected a portion of the land as the site for a new school building. Rutherford County named Martha Wilson, Jane Wilson and Diane McCord in its condemnation proceeding. In anticipation of condemnation, the three women executed a series of quit claim deeds, seemingly with the objective of conveying all right, title and interest in the condemned portion of the life estate property to Jane Wilson, in exchange for her interest in the portion of the life estate property not condemned. Later, in their respective answers to the Petition for Condemnation both Martha Wilson and Diane McCord disclaimed any legal interest in the tender amount, $450,000, and both asserted that the amount is exclusively owned by Jane Wilson.

Cathey Baskin, wife of the late Kenneth Wilson and mother of Diane McCord, was not named in the condemnation proceedings, nor was she a party to the property transfers between Martha Wilson, Jane Wilson and Diane McCord. Ms. Baskin intervened in the case, claiming that she inherited, through intestate succession, a one sixth (1/6) interest in the property. The trial court held that Ms. Baskin did not have an interest in the property because it determined the provisions of Tenn. Code Ann. § 32-3-104 applied, and that pursuant to the case law interpreting this statute, "a class takes a vested, transmissible interest in the remainder." The court then held that:

At the time of [Kenneth Wilson's] death his interest transferred to the only heir of the body of Martha Jordan Wilson, Ms. Diane Wilson McCord. . . . According to T.C.A. § 32-3-104, this interest can only be passed to the 'surviving issue' of a class member. It is the court's opinion that T.C.A. § 32-3-104 supersedes the estate law [intestate succession] thus, preventing the vested transmissible interest from entering into Kenneth Dwayne Wilson's estate.

Ms. Baskin appeals the trial court's ruling. As the parties agreed, because there is no dispute as to the facts that are relevant to the determination of this claim, this case presents purely a question of law. Consequently, our review of the trial court's determination of the question of law is *de novo*, without any presumption of correctness as to the trial court's decision. Tenn. R. App. P. 13(d); *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

## II. Condemnation Proceeds

This appeal involves a dispute over the proceeds from condemnation of real property subject to a life estate which was involuntarily conveyed during the life tenancy.

> The well-established general rules of eminent domain seem to be that, when a piece of property is taken, in which the ownership is divided into several interests, as between the public and the owners, it is considered one estate; that the public right is exercised upon the land itself without regard to the subdivisions of interest; that the amount of the value of the land to which each one of the owners of the interests is entitled is no concern of the condemnor; that the various owners' interests in the property are transferred to the fund, allowed as damages to compensate them for the injury to the land, which is substituted for the property taken . . . .

*Moulton v. George*, 208 Tenn. 586, 590, 348 S.W.2d 129, 130 (Tenn. 1961) (citation omitted).

There is no dispute over the county's authority to condemn the subject property or over the amount paid in compensation for the land. The dispute involves the division of that compensation. Thus, we must begin our analysis with the law regarding disposition of such proceeds. In *Beech v. Hibbett*, No. M1997-00239-COA-R3-CV, 2000 WL 987828 (Tenn. Ct. App. July 19, 2000) (no Tenn. R. App. P. 11 application filed), this court addressed the same question in the context of condemnation of real property in which a life estate existed in the testator's widow with the remainder vested in his daughter. Upon full review of authority on the issue, this court concluded:

> Where the ownership of condemned realty is divided between a life tenant and one holding a vested remainder, the condemnation award should not be merely divided between the owners and paid out. Instead, the entire amount of the award should be made available to the life tenant on specific condition that he or she invest it whole. The life tenant is thereafter solely entitled to all the resulting investment income from the award until the life estate ends naturally or determines on condition, after which

3

the full amount of the original award must be distributed to the holder of the remainder interest.

By allocating the rights to condemnation proceeds in this way, the law attempts to achieve some consistency between the way it treats holders of property interests before and after their realty is, against their volition, changed into personalty.

*Id.* at *3 (citations omitted).

The court's reasoning was based upon the principles that: (1) a taking of fee by eminent domain takes all the related property interests, and those interests cease to exist after the taking; (2) the owners of interests in the condemned property are entitled to share ratably in the condemnation proceeds to reimburse them for the value of their interests; (3) while the life tenant is entitled to "use" of the property during the term of the life estate, such entitlement does not include the right to encroach on the corpus or commit waste of the property to the detriment of the remaindermen;[1] (4) when real property is converted to personalty, the life tenant's right to "use" of the property is the right to receive income produced by the property. *Id.* at * 2-3.

Thus, the holding in *Beech* would require that the proceeds from the condemnation herein be paid to the life tenant, Martha Wilson, for investment.[2] She would be entitled to income earned by that investment during her life. Upon the death of Martha Wilson and the concomitant termination of her life estate, the proceeds from the condemnation would be divided among the remaindermen. Unlike the *Beech* case, the case before us does not involve a grant of the remainder to one named person.[3] Instead, the grantor has conveyed the remainder to one of two classes of

---

[1]Martha Wilson, as the life tenant, cannot injure or commit waste to the real property to the detriment of the interests of the remaindermen. A life tenant is subject to liability for "an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate . . . which results in its substantial injury," *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 510, 341 S.W.2d 392, 396 (1960) (quoting *Thayer v. Shorey*, 287 Mass. 76, 191 N.E. 435, 437, 94 A.L.R. 307), including lasting damage to the remainder or depreciation in its value. *Thompson v. Thompson*, 206 Tenn. 202, 214, 332 S.W.2d 221, 227 (1960); *Barber v. Westmoreland*, 601 S.W.2d 712, 716 (Tenn. Ct. App. 1980). Thus, a life tenant has an obligation to preserve the value of the land for those with subsequent or remainder interests, *see* RESTATEMENT OF THE LAW OF PROPERTY §138, at 450 (1936), so that "the estate may revert to those having an underlying interest, undeteriorated [by] any willful or negligent act." 93 C.J.S. *Waste* §1, at 560 (1956). Obviously, sale of a portion of the land would decrease the value of the remaindermen's interests in the entire parcel. Where, through condemnation, an involuntary sale occurs, the life tenant's duty to preserve the value of the remaindermen's interest also applies to the proceeds from the condemnation of that portion of the land which was condemned, according to the holding in *Beech*.

[2]Because Martha Wilson has quitclaimed her interest in the condemned property, conveying her life estate interest in that property to Jane Wilson, the duty to preserve the condemnation proceeds may, in fact, have been transferred to Jane Wilson, along with the right to the income from investment of those proceeds during Martha Wilson's life.

[3]The *Beech* case dealt with an unquestionably vested remainder interest, where the main issue in this case is

(continued...)

4

persons. In situations involving alternative remainders or those to a class of heirs of the body, ordinarily the question of who are the remaindermen entitled to take possession of the real property, and the resulting proportionate share of each, would be left until the termination of the life estate. Similarly, the question of the identity and number of persons entitled to share in the proceeds of the condemned portion of the property would also be left until the termination of the life estate.

Since, under *Beech*, a remaindermen's rights in the proceeds do not ripen into possession until the termination of the life estate, no potential remainderman has a present interest in the proceeds which would entitle him or her to an immediate distribution of a share of the proceeds. However, in addition to claiming an interest in the distribution of the proceeds, Ms. Baskin also claims a portion of the remaining real property which is the subject of the remainder. Further, to the extent she is entitled to part of the remainder, she has a present interest in requiring protection of the condemnation proceeds during the life tenancy.[4]

## III. Nature of Claim

The essential question involves the nature of the interest held by members of the class, or of either class, of potential remaindermen. Ms. Baskin argues that her husband had a vested transmissible interest in one-third of the land; the other identified potential remaindermen appear to be acting on the belief that they also have a vested interest that can be transferred or conveyed, although it would appear that they define the scope of that interest as one-half each of the remainder. Both these positions appear to rest on a presumption that the membership of the class of remaindermen is determinable before the termination of the life estate. The difference in the size of the portions each asserts she is entitled to is attributable to each party's description of the class of remaindermen.

Cathey Baskin argues that she has a one-sixth interest in the life estate property, and the proceeds therefrom. The language of the grant deeding the remainder interest to the "heirs of her [Martha Wilson's] body on her death," would appear to preclude Ms. Baskin's claim because that term does not include a non-lineal descendant, such as a daughter-in-law. Absent language to the

---

[3](...continued)
the nature of the interest held by potential remaindermen. We think that distinction, however, does not change the holdings regarding the life tenant's use of income and duty to protect the corpus for the eventual owners.

[4]Judicial economy is also served by our determination of the issues raised concerning rights in the remainder. The other known potential remaindermen have entered into conveyances apparently designed to combine the life estate and remainder interests in portions of the land. While the parties are free to transfer whatever interests they hold, such transfers would be ineffectual to deprive other remaindermen, whether that class includes Ms. Baskin or other unknown parties, of their interests in the land retained or the proceeds from the land condemned. Nor can the interests of Will Jordans's "next of kin" be adversely affected. *See Manhattan Savings Bank & Trust Co. v. Bedford*, 161 Tenn. 187, 197-99, 30 S.W.2d 227, 230-31 (1930). In addition, to the extent the parties to the transfers believe they hold and can convey greater interests than they do, outside parties may be affected and additional litigation generated if we fail to clarify those interests.

contrary, "heirs of the body" means lineal descendants. *Fehringer v. Fehringer*, 222 Tenn. 585, 590, 439 S.W.2d 258, 260 (1969).

> It is settled law in Tennessee that in its primary sense, a remainder to the "heirs of his [life tenant's] body" is a remainder to the life tenant's *lineal descendants*. This was affirmed in *Campbell v. Lewisburg & N.R. Co.*, 160 Tenn. 477, 26 S.W.2d 141 [(1930)]; and *Manhattan Savings Bank & Trust Co. v. Bedford*, 161 Tenn. 187, 30 S.W.2d 227 [(1930)].

*Fehringer*, 222 Tenn. at 590, 439 S.W.2d at 260 (emphasis in original).

The Supreme Court in *Fehringer* went on to quote the RESTATEMENT OF THE LAW OF PROPERTY, FUTURE INTERESTS, which was relied upon in *Spencer v. Stanton*, 46 Tenn. App. 688, 333 S.W.2d 225 (1959), as the "clearest statement of the meaning of the words 'heirs of the body:'"

> "When a limitation is in favor of the 'heirs of the body' of a designated person . . . then, unless a contrary intent of the conveyor is found from additional language or circumstances, the persons so described by the limitation as conveyees are the lineal descendants of the designated ancestor who under the applicable local law would succeed to the property if such ancestor died owning the property and intestate at the time when the group is to be ascertained. . . ."

*Id.* 222 Tenn. at 591, 439 S.W.2d at 260 (quoting *Spencer*, 46 Tenn. App. at 702, 333 S.W.2d at 231 (citation omitted)).

The term "heirs of the body" is not the same as "heirs" and creates "a remainder altogether different in its meaning and effect . . . ." *Fehringer,* 222 Tenn. at 590, 439 S.W.2d at 260. The term "heirs of the body" and similar terms, such as "bodily heirs" or "bodily issue," are not synonymous with words such as "lawful heirs." *Third Nat'l Bank in Nashville v. Stevens*, 755 S.W.2d 459, 464 (Tenn. Ct. App. 1988) (finding an adopted child is not "bodily issue" of the adoptive parent). While heirs of the body must be "heirs," use of the term limits the grant to those heirs who are "begotten or borne by the person referred to." *Id.* at 463. Ms. Baskin does not meet that requirement.

Further, it is apparent from the language of the grant that the grantor intended that the deeded property go to Martha Wilson's lineal descendants. Courts, when analyzing deeds of conveyance, as when interpreting a will, attempt to ascertain the intent of the parties in light of the circumstances existing at the time. *Doochin v. Rackley*, 610 S.W.2d 715, 718 (Tenn. 1981). The overriding purpose of any deed interpretation is the determination of the grantor's intent at the time the conveyance was made. *Hall v. Hall*, 604 S.W.2d 851, 853 (1980); *Collins v. Smithson*, 585 S.W.2d 598, 603 (Tenn. 1979). In Tennessee, courts favor the right of a possessor of property to dispose of it "by clear and unequivocal meaning without unreasonable legislative or judicial interference or alteration." *Stevens*, 755 S.W.2d at 464. Thus, although courts have developed rules of construction to aid them in interpreting a grant, such rules are just that, aids in determining the intent of the grantor. The overriding purpose of all rules of construction is the ascertainment of the parties'

6

intent. *Quarles v. Arthur*, 33 Tenn. App. 291, 295, 231 S.W.2d 589, 591 (1950). It is clear that in his first disposition of the remainder Will Jordan intended that the ownership of the land pass only to those persons who were lineal descendants of his daughter Martha Wilson. In fact, the grantor provided that if Martha Wilson had no lineal descendants at her death, "then the remainder interest shall go to my next of kin as provided by law." Thus, the grantor preferred that the land go to his heirs rather than to heirs of Martha Wilson or her non-surviving issue if those heirs were not Martha Wilson's lineal descendants.

Similarly, the class of persons who would take the remainder if no lineal descendants of Martha Wilson exist at the time of her death, the grantor's next of kin, does not include Ms. Baskin, the widow of the grantor's grandson. Absent contrary intentions of the grantor "the words 'next of kin' must be given their ordinary meaning of relatives in blood. They will not ordinarily include the widow of the testator. And the husband is not 'next of kin' to the wife within the ordinary meaning of a will." *Frank v. Frank*, 180 Tenn. 114, 177, 172 S.W.2d 804, 807 (Tenn. 1943) (citation omitted). In *Frank*, the Tennessee Supreme Court held that the term "next of kin" "has not acquired any meaning other than that of nearest blood relative." *Id.*; *see also Fariss v. Bry-Block Co.*, 208 Tenn. 482, 489-90, 346 S.W.2d 705, 707 (Tenn. 1961).

The basis of Ms. Baskin's claim, however, is not a direct grant to her in the deed. Instead, she asserts that her husband, Kenneth Wilson, had a vested transmissible interest in the property at the time of his death, which upon his death was passed to Ms. Baskin through intestate succession. The foundation of Ms. Baskin's argument is that the remaindermen of the grant were Martha Wilson's three children; that a remainder interest vested in each child during the life tenancy of Martha Wilson; and that each of the three children had a vested, transmissible one-third interest in the remainder.[5] Accordingly, the argument continues, each of the three children could transfer his or her interest, during life or by will or intestate succession upon death.

## IV. The Grant Itself

A remainder is a future interest created in a transferee which can become a present possessory estate only on the expiration of the preceding estate. *Jackson v. Jackson*, 219 Tenn. 237, 242-43, 409 S.W.2d 172, 174-75 (1965); LEWIS M. SIMES & ALLEN F. SMITH, THE LAW OF FUTURE INTERESTS § 64 (2d ed. 1956). The issue of whether an interest in a remainder is vested, and to what extent it is vested, has been the subject of many cases, learned articles, and treatises. When describing types of remainders, different authorities, including various courts, have used terms such as contingent remainder, remainder subject to condition, remainder subject to condition precedent, vested remainder subject to open, vested remainder subject to complete defeasance, indefeasibly

---

[5] Ms. Baskin states that William Wilson, a son of Martha Wilson who predeceased her and left no children or other heirs of his body, had a vested one-third interest in the remainder and that, upon the death of the life tenant, his one-third interest would become part of his estate.

vested remainders, and others.[6] Although arguments could be made that the interests conveyed to the remaindermen herein, including Ms. Baskin's deceased husband, are properly classified as any of several of the types of remainders listed above, regardless of the precise term of art to be applied, it is the nature of the interest conveyed which is determinative.[7]

As explained above, our task is to determine the intent of the grantor with regard to the disposition of his property. The beginning point for that inquiry is, of course, the language used by the grantor. The record herein provides few additional facts which could be considered circumstances relevant to the grantor's intent at the time he executed the deed. Because the grantor referred to his daughter by her married name, we know that she was married at the time of the grant. However, the record before us does not indicate whether she had any children at the time of the grant.

We begin by restating the grant. *Commerce Union Bank v. Warren County*, 707 S.W.2d 854, 858 (Tenn. 1986). The grant in the deed clearly gave a life estate to Martha Wilson. Upon her death, the remainder will pass to either (1) the class of persons described as heirs of Martha Wilson's body or (2) the class of persons described as the next of kin of Will Jordan, the grantor. Which class of persons will become owners of the fee is to be determined by the grantor's clear criteria: whether, at her death, Martha Wilson has any children or representatives of children, or in other words, heirs of her body.

We interpret this language as requiring the survival of at least one member of the class of Martha Wilson's bodily heirs to the date of her death for that class to take. The result is that the determination of which class of potential remaindermen is to take the property cannot be made until Martha Wilson's death. Whether that provision is considered as creating alternative contingent remainders, a remainder subject to defeasance, a remainder with a condition precedent, or a limitation or gift over on failure of issue, the result is the same. The grantor made provision for disposition of the remainder in either of two sets of circumstances: there are heirs of Martha Wilson's body alive at the time of her death or there are not. Which circumstance exists at that time will determine which class of potential grantees is to receive the remainder.

In *Harris v. Bittikofer*, 541 S.W.2d 372 (1976), the Supreme Court interpreted a will which devised all of the testator's property to the testator's daughter, Nellie:

> to have and to hold the same *during her natural life, and her bodily heirs, if any, forever*; provided however, that in case daughter [Nellie] *should die leaving no bodily issue*, and her husband . . . should survive her, then *all I have bequeathed to her, shall revert to my granddaughter* [Jawana] *or her heirs.*

---

[6] One treatise even acknowledges the existence of a "vested interest in a contingent remainder." SIMES & SMITH, *supra*, § 112.

[7] RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) (1989) has taken that approach, generally eschewing the older labels.

*Id*. at 373 (emphasis in original).

The court held that under this language the daughter took a life estate, with alternative contingent remainders. The alternatives depended upon whether Nellie died without issue and whether her husband survived her. At the time of the appeal, the life tenant, Nellie, was still alive. In discussing the alternative contingent remainders, the Court explained that the first was to the life tenant's bodily heirs or issue if there were any at Nellie's death. "This interest would ripen into a present possessory interest in fee upon the culmination of the prior particular estate, by the death of Nellie." *Id.* at 384. If the life tenant, Nellie, were to die without issue and her husband survived her, the remainder would vest in Jawana in fee simple. *Id.* at 385.[8]

In addition, the *Bittikofer* court held that the time at which to determine whether Nellie Harris had issue was at her death. Thus, entitlement to the remainder was to be determined at the termination of the prior estate. *Id*. at 378-80. After reviewing various cases regarding limitations on failure of issue, the court determined that where the disposition is preceded by a life estate, the question of whether there is issue is to be answered at the death of the life tenant, unless otherwise clearly indicated. *Id*. at 380. The court held that the testator in *Bittikofer* intended definite failure of issue, i.e. at the death of the life tenant.

The Supreme Court was called upon to visit the *Harris v. Bittikofer* situation again in an appeal involving collection of fees of the guardian ad litem for the unborn heirs of Jawana Sue Gupton.[9] The Court described its earlier decision as a determination that the interest of the unborn heirs was a remainder following a life estate, contingent upon: (1) Nellie Gupton Harris dying without issue; (2) Nellie predeceasing her husband; and (3) their mother, Jawana, predeceasing them. *Id.* at 814.

Similarly, in *Fehringer*, the Tennessee Supreme Court held that a testamentary gift of a remainder to the heirs of the body of the life tenant created a contingent remainder in such potential heirs and that until the death of the life tenant those heirs were unascertainable. *Fehringer,* 222

---

[8]Interestingly, there was no provision in the will that addressed distribution of the property in the event that Nellie left no issue but was pre-deceased by her husband. Therefore, this will created alternative contingent remainders with the possibility of reverter in that the property would revert to the grantor if both contingent remainders failed.

[9]The trial court had originally ordered the real property which was subject to Nellie Gupton's life estate sold to pay the fees. Later, it set aside the sale and the lien on the property, and the Supreme Court affirmed that later action, stating, "The lien and sale were void for several reasons; the most obvious is the principle that a contingent remainder interest is not subject to execution and sale by a judgment creditor." *Bittikofer*, 562 S.W.2d at 817. After reassessing costs half to the life tenant and half against the interest of all contingent remaindermen, the court stated, "A lien will be declared upon the remainder interest only, but its enforcement must await the vesting of those interests." *Id*. at 818.

Tenn. at 593, 439 S.W.2d at 261-62. The court held, after the death of the life tenant, that because the life tenant died without leaving lineal descendants, the contingent remainder failed. *Id.*[10]

Therefore, we conclude that the gift to the heirs of the body of Martha Wilson is conditioned on there being at least one bodily heir or lineal descendant living at the time of her death. Otherwise, the gift fails and the alternative disposition becomes effective. Consequently, the determination of which class of potential remaindermen will become owners of the property cannot be made until the death of the life tenant. For that and other reasons discussed below, the identity of the individual members of the class who will take, the number who will take, and the resulting share of each cannot be determined until the death of the life tenant.

Although we have determined that the identity of which class of potential remaindermen will take remains uncertain until the death of the life tenant, Ms. Baskin's claim relates to her husband's membership in only one of those classes, the heirs of the body of Martha Wilson.[11] Therefore, we will examine the issues raised by the gift to that class, separate and apart from the issues raised by the alternative grant to two different classes.

## V. Gift to a Class of Heirs of the Body

A class gift is a gift to a group of persons who are not named, whose number may vary, and who have one or more characteristics in common. *Jennings v. Jennings*, 165 Tenn. 295, 301, 54 S.W.2d 961, 963 (1932). Where the donor has indicated an intent to designate the recipients as a group, rather than to designate as transferees the separate individuals who comprise the group, the gift is one to a class. SIMES & SMITH, *supra,* § 612. Terms which describe the beneficiaries by the membership in an identifiable group are class gift terms. RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) Part V Introductory Note.

---

[10]The Court further held that because the remainder was not effectually disposed of, it was part of the "rest, residue, and remainder" of the father's estate and passed according to the will's disposition of the residuary estate. *Fehringer*, 222 Tenn. at 593-94, 439 S.W.2d at 262. The court explained:

> by the very nature of a contingent remainder there continued in the testator, at the very time of its creation, a distinct possibility that the contingent remainder would fail for lack of a class in which to vest, and because of this a reversionary interest exists which passes under the residuary clause. This possibility of reverter did not arise after death, but arose when the contingent remainder was created, and is an interest which passed under the residuary clause.

*Id*. This case does not involve a reversion because the grantor made an alternative disposition of the remainder in case of failure of the first grant on the condition of survivorship of an heir of the body.

[11]Jane Wilson and Diane McCord base their interests on membership in the same class.

In examining the conditional[12] grant upon which Ms. Baskin's claim is made, the grantor gave the remainder interest to a defined group or class of people: the heirs of the body of the life tenant. The grantor did not identify individual grantees but described a group of people who were described by a characteristic: lineal descent from Martha Wilson.

One of the issues raised by a class gift is identification of those persons falling within the definition of the class.[13] Ms. Baskin's position rests in part on her interpretation of the deed as making a gift of the remainder to Martha Wilson's three children.[14] We disagree with that interpretation. While Martha Wilson's children are certainly members of the class "heirs of her body," they are not the only members. The grant was not made only, or exclusively, to the children either by name or description.

A donor's use of the terms "issue," "descendants," or the like to describe the beneficiaries means a gift to a multigenerational class. RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) § 25.9.[15] The term "heirs of the body" also connotes a gift to a multigenerational class of lineal descendants. *Id.* § 25.9 at com. b. Absent language or circumstances indicating a contrary intent, it is presumed the donor adopted these meanings.

Tennessee courts have adopted presumptive meanings of technical terms such as "heirs of the body." As discussed above, a gift to the heirs of a life tenant's body is a remainder to the life tenant's lineal descendants. *Fehringer*, 222 Tenn. at 590, 439 S.W.2d at 260. Absent circumstances requiring a different interpretation, "heirs of the body" includes generations after children as well as children. *Campbell*, 160 Tenn. at 477, 26 S.W.2d at 141. A similar multigenerational term,

---

[12] Because we have determined that the grant to the heirs of the body is conditioned upon survival of at least one such heir until the death of the life tenant, we will refer to the grant as conditional.

[13] A determination that a grant is a class gift raises the issues of: (1) who is a member of the gifted class; (2) whether survival to the time of distribution is required in order to participate in the remainder; and (3) how each member's share of the remainder is to be calculated. RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) §§ 25-30 (1989).

[14] A class of children cannot close until the death of the parent. *Scales v. Scales*, 564 S.W.2d 667, 672 (Tenn. Ct. App. 1977). Martha Wilson is still alive and for purposes of legal application we assume that she can bear children regardless of her age. The same is true of her daughter and granddaughter. *Karsch v. Atkins*, 203 Tenn. 350, 353, 313 S.W.2d 253, 254 (1958) (holding that it is a "well recognized principle that in contemplation of law the possibility of issue is never extinguished until death"). Consequently, until the death of Martha Wilson, the number of remaindermen, even under Ms. Baskin's theory, cannot be ascertained. Even where a remainder interest vests, in such a situation it is considered to be subject to open to let in other members of the class. *Scales*, 564 S.W.2d at 672. Ms. Baskin's theory that Martha Wilson's three children each took a one-third interest fails to take into account the possibility of additional members of the class.

[15] "When the donor . . . describes the beneficiaries thereof as "issue" or "descendants" of a designated person, the donor has used a class gift term that primarily refers to a succession of generations down from the designated person. The term "children" primarily refers to the first generation down from the designated person." RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) § 25.9 com. a.

11

"issue," has been interpreted as including "all persons who have descended from a common ancestor, and unless controlled by the context, means lineal descendants without regard to degree of proximity or remoteness." *Burdick v. Gilpin*, 205 Tenn. 94, 109, 325 S.W.2d 547, 554 (1959). Similarly, in *Patterson v. Alexander*, 509 S.W.2d 834 (Tenn. 1974), the court examined the testator's intent in the use of the word "heirs:"

> In Tennessee, the established rule is that the word "children" refers only to immediate offspring. Since the testator chose a term other than "children" to delineate the class of prospective buyers,[16] we assume he did so purposely and had in mind that definition of "heirs" which refers, not to "children" alone, but to the lineal descendants. The will does not suggest any contrary construction.

*Id*. at 835.

The intent of the grantor controls the meaning of terms used, and where an intent contrary to the legal definition is clear, it will be used. However, when "a technical word is applied to real estate, it must be construed according to its strict legal meaning." *Scruggs v. Mayberry*, 135 Tenn. 586, 602, 188 S.W. 207, 210 (1915). Where technical words are used in a will, they are presumed to be used in a technical sense, and "before another meaning can be attached to them, that meaning must clearly appear . . . ." *Id.* The same rule applies to deeds: unless the plain meaning of the language used or other circumstances dictate the contrary, the technical meaning of terms used in deeds will be applied. *In re Estate of Wilson*, 825 S.W.2d 100, 102 (Tenn. Ct. App. 1991).

We find nothing in the language of the deed or other surrounding circumstances to indicate that Will Jordan intended the phrase "heirs of her body" to mean only Martha Wilson's children and not other generations of descendants as well. To the contrary, the grantor's language indicates an understanding of the technical meaning of "heirs of the body" as well as an intent that generations beyond children be included. The grant makes an alternative disposition "should the said Martha Jordan Wilson have no children or representatives of children at her death." The phrase "representatives of children" refers to the principle that later generations take by representation the share of a deceased parent.

As discussed earlier, "heirs of the body" must be lineal descendants, but also must be the intestate heirs of the person. The legal meaning of the word "heirs" is the class of persons upon whom descent is cast by the statute of descent and distribution. *Fisher v. Malmo*, 650 S.W.2d 43, 46 (Tenn. Ct. App. 1983). The grantor reaffirmed his intention that this meaning attach by directing that the remainder be distributed to the heirs of the body "in accordance with the laws of descent and distribution." In relevant part, the appropriate statute, Tenn. Code Ann. § 31-2-104, provides that issue of the same degree of kinship take equally, but if of unequal degree, the more remote issue

---

[16]The testator had used the term "children" to refer to the devisees, but changed terms to describe those persons to whom the children could sell their property, and the court found this change of terms signified the testator's intent to distinguish between the two classes. Will Jordan also mentioned Martha Jordan's children or representatives of children, but in a way that is consistent with the multigenerational interpretation.

"take by representation." Tenn. Code Ann. § 31-2-104(b)(1). The term "by representation" refers to the principle by which the issue of a deceased person take or inherit the share of an estate which their immediate ancestor would have taken or inherited if living. *See* BLACK'S LAW DICTIONARY 1301 (6th ed. 1990); *see also Barnes v. Redmond*, 127 Tenn. 45, 51, 152 S.W. 1035, 1036 (1913).

Therefore, we interpret the language used as indicating the grantor's intent that more than one generation of lineal descendants be included as potential remaindermen before the remainder passes to his next of kin. Accordingly, we conclude that the conditional grant of the remainder herein was to that class of persons who were the lineal descendants of Martha Wilson, the life tenant. It was not a grant solely to her children.

## VI. Requirement of Survival

Having determined that the conditional grant was to the class of "heirs of the body" of Martha Wilson, we must still determine who, within that definition, would take a share of the remainder if it passes to that class. Even persons who are within the primary meaning of the term describing the class may be excluded from taking depending on when class membership is to be determined and whether survival by an individual to the date of possession is a required condition of taking.

> The basic problem is to determine the circumstances in which the owner of a future interest of any type will be required to survive, not the creation of his interest, but rather the date after its creation when his future interest is to become a present possessory interest. Stated in terms of legal consequences, the inquiry is whether or not the future interest is transmissible in his estate in the event of his death prior to the time when it is to become a present interest.

Herman L. Trautman, *Class Gifts of Future Interests: When Is Survival Required?*, 20 VAND. L. REV. 1, 15 (1966).

By the specific terms of the deed, the remainder interest is to "go to the heirs of her body on her death." Thus, the future interest in the remainder does not become possessory until the death of the life tenant. The general rule is that a postponed gift to the "issue" or "heirs" of a living person describes a group of persons who cannot be presently ascertained. *See* SIMES & SMITH, *supra*, §§ 579, 732. Tennessee law is in accord. A living person has no heirs, and the membership of the group "heirs of her body" cannot be determined until Martha Wilson's death. *Fisher,* 650 S.W.2d at 46 (interpreting term in will "heirs at law"). "A remainder to the heirs of the life tenant is generally a contingent remainder, for, there being no heirs to a living person, until the termination of the life estate, no one can claim as the heir of the life tenant." *Burton v. Kinney*, 191 Tenn. 1, 6, 231 S.W.2d 356, 358 (1950) (quoting 23 R.C.L., Section 95, page 551); *see also* JACK W. ROBINSON, SR. & JEFF MOBLEY, PRITCHARD ON THE LAW OF WILLS AND ADMINISTRATION OF ESTATES § 463 (1995). Thus, the general rule is that the identity of the members of the class of remaindermen described as heirs cannot be ascertained until the death of the life tenant.

Consequently, the size of the class and the portion given to each class member cannot be ascertained until that time.

Applying this general rule to the case at hand, the identity of those "heirs of the body" of Martha Wilson entitled to take a share of the remainder cannot be determined until her death. Thus, no determination can be made prior to that event of the share to be taken by each heir of the body, assuming that class takes the remainder. *See* PRITCHARD, *supra,* § 463. (Where the gift is of an aggregate sum or entire thing to a body of persons of uncertain existence or indefinite number as a unit, they take as a class, the share of each being dependent upon the ultimate number of persons entitled to take.).

The conclusions resulting from application of these general rules are the conclusions to be reached herein because of the language of the deed. Under Tennessee law, both the use of the term "heirs of the body" and the condition that such heirs of the body of the life tenant exist at the time of her death have significance.[17] The use of the term "heirs of the body" has legal consequences long recognized in Tennessee, and absent clear intent to the contrary, those consequences will be applied. The basic treatment of that term is established in the statute which abolished the Rule in Shelley's Case,[18] Tenn. Code Ann. § 66-1-103:

> Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination

---

[17] We have previously discussed the significance of the condition of survival of at least one bodily heir as creating alternative contingent remainders or a remainder subject to a condition. For the present discussion, it is significant because it is additional indicia of the requirement of individual survival to the life tenant's death.

[18] At common law, the Rule in Shelley's Case operated to convert a transfer to A for life, "then to the heirs of A" or "then to the heirs of A's body" into a fee simple transfer to A.

> Under the Rule in Shelley's Case, if a transfer of real property was made by an owner in fee simple to a designated person for life and the same transfer also limited a remainder, either mediately or immediately, to the heirs or to the heirs of the body of the designated person, and the estate for life and such remainder were both legal or both equitable, then the transfer created a remainder in the designated person and the words describing the heirs or the heirs of the body were words of limitation determining the type of such person's estate in the remainder.

> The estate for life in the designated person and the remainder in the designated person that resulted from the operation of the Rule in Shelley's Case merged unless there was an intervening estate.

RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) § 30.1.

of the life estate, are heirs or heirs of body of such tenant, shall take as purchasers,[19] by virtue of the remainder so limited to them.

Tenn. Code Ann. § 66-1-103 (emphasis added).

Thus, under the statute, membership in the class is determined at the time of the death of life tenant and survival to that time is required for an individual to take a share of the remainder. This statute applies to deeds as well as wills. *Butler v. Parker*, 200 Tenn. 603, 611, 293 S.W.2d 174, 177 (1956). Our Supreme Court has recognized and discussed the effect of the statute abolishing the Rule in Shelley's Case. *Bittikofer*, 541 S.W.2d at 380-83. In this 1976 opinion, the Court quoted with approval from *Bedford*, wherein it was determined that the statute had converted "heirs of the body" from words of limitation to words of purchase describing the takers of the remainder.[20] *Bittikofer*, 541 S.W.2d at 380-83 (quoting *Bedford*, 161 Tenn. at 195, 30 S.W.2d at 229).

In *Bedford* the court analyzed a grant of half a farm to the testator's son, Julian T. Bedford for life "and at his death the remainder shall go to the heirs of his body." *Bedford*, 161 Tenn. at 191, 30 S.W.2d at 228. The testator made an identical bequest of the other half of the farm to his other son, and the court interpreted the bequest of the remainders to the heirs of the body of testators's sons as contingent remainders because the identity of the heirs of the body could not be determined until the death of the life tenant.

In addition, the Court in *Bittikofer* found the case of *Butler v. Parker*, significant to its decision and adopted its holdings. In interpreting a grant to "Ralph Parker and at his death to his bodily heirs," the *Butler* court found the situation controlled by the statute abolishing the Rule in Shelley's Case and that the words conveyed a life estate to the grantee with a contingent remainder to his heirs. *Butler*, 200 Tenn. at 610, 293 S.W.2d at 177. In a section quoted in *Bittikofer*, the *Butler* court further explained:

---

[19]Many opinions describe "heirs of the body" as either words of purchase or words of limitation. Although the correct classification is now largely contextual, *Commerce Union Bank v. Warren County*, 707 S.W.2d 854, 859 (Tenn. 1986), the description used may be a result of whether the Rule in Shelley's Case had been abolished at the time of the grant. As a general statement, words of limitation mark or define the quantum of the estate; on the other hand, words of purchase designate the taker of the estate. *Bittikofer*, 541 S.W.2d at 380-83; Jack D. Jones, *Future Interests - Tennessee Style*, 54 TENN. L. REV. 413, 419 (1987).

[20]"The devise to Julian T. Bedford expressly limits his estate to the period of his life. If he is given more, it is by virtue of the words of the devise: 'and at his death the remainder shall go to the heirs of his body.' Before the statute, these words were words of limitation or descent, and directed that the fee should 'descend' from the life tenant to the heirs of his body. Since the fee could not 'descend' from him who had it not, the words of descent or limitation were held to vest the fee in him who was, in form, only a life tenant. But the statute stripped these words of descent or limitation of their previously possessed characteristic, when used in connection with the creation of a life estate, and recreated them as words of purchase, no longer to convey the meaning of descent or inheritance." *Bedford,* 161 Tenn. at 195, 30 S.W.2d at 229.

15

Clearly under this statutory provision the heirs or heirs of the body of the grantee which before would have only enlarged the life estate of the parent into a fee has the result of limiting the interest of the grantee in the property devised to a life estate with a contingent remainder in fee to those who at the death of the life tenant will answer the description of the heirs of his body.

*Id.* 200 Tenn. at 610, 293 S.W.2d at 177.

The *Bittikofer* court applied the statute and the cases mentioned above and others to interpret a devise to Nellie Gupton Harris 'during her natural life, and her bodily heirs, if any, forever . . . .' The court's primary holding was that other provisions of the will created alternative contingent remainders in two classes of possible remaindermen and that entitlement to the remainder could not be determined until Nellie's death, as discussed earlier in this opinion. Nonetheless, the *Bittikofer* opinion is clear that the statute, now Tenn. Code Ann. § 66-1-103, applies to a grant of a remainder to the class of heirs of the body of the life tenant. The statute and the *Bittikofer* opinion clearly state that the remainder would belong to those persons who on the death of the life tenant actually are the heirs of her body.

In 1963 and again in 1969, our Supreme Court was called upon to determine the interests conveyed by a will provision granting a tract of land to a testator's two sons for life "and upon the death of either of my sons their interest in the above described real property, I hereby give, devise and bequeath unto the heirs of his body." In both opinions the court held that the remainder to the heirs of the body was contingent and the owner(s) of the remainder could not be ascertained until the death of the life tenant. *Fehringer v. Fehringer*, 212 Tenn. 75, 367 S.W.2d 781 (1963); *Fehringer*, 222 Tenn. at 587, 439 S.W.2d at 258.

As these opinions demonstrate, our Supreme Court has consistently held that a remainder to "heirs of the body" of the life tenant is contingent, at least as to any individual,[21] and that the determination of those persons who take the remainder cannot be made until the death of the life tenant, requiring survival to that date. Thus, according to statute and case law, the remainder passes to those persons who, on the termination of the life estate, actually are the heirs of the body.

Tennessee is in accord with the general rule regarding a remainder to the heirs of the body of the life tenant.

If a gift is made to a class described as the "heirs" of a designated person, or by a similar class gift term, and a particular statute governing the intestate takers of property is to be used to determine the persons who come within the primary meaning of the class gift, in the absence of additional language or circumstances that indicate otherwise, such statute is applied as of the designated person's death.

_____

[21] As we have previously determined, the gift herein to the class itself was also conditional, based upon the requirement that at least one member of the class survive the life tenant.

RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) § 29.4.[22]

Additionally,

> where a postponed gift is given to persons described as the "issue" or "heirs" of a living person, and it is decided that the description is used in its technical sense, then the words describe a group of persons who cannot be presently ascertained. The gift is therefore contingent, because in order to become an "heir" one must survive his ancestor. There is a requirement of survival, which is normally regarded as a condition precedent.

SIMES & SMITH, *supra*, §579.

Finally, in an article dealing with rules of construction and donor intent in class gift situations, especially the issue of when survival is required, Professor Trautman explained that the question of who is included in a particular class of beneficiaries is answered by the donor. When the donor's intent regarding that issue, including survivorship to a particular event, is not clear, courts apply rules of construction to determine that intent. Trautman, *supra*, 20 VAND. L. REV. at 11. In those situations, Professor Trautman posited that a requirement of survival may be substantially indicated by the testator's description of the class of intended beneficiaries. Specifically with regard to gifts of a future interest to a class of heirs, next of kin, or similar terms, Professor Trautman explains "The thought often intended to be communicated is that the property should be divided at the end of the life estate among those persons who at that time are the nearest blood relatives, or those blood relatives who would inherit under the laws of intestate succession if the ancestor had died at the termination of the prior estate or at the future event." *Id.* at 18. The article summarizes "while class gifts of future interests to 'children', 'grandchildren', and the like do not imply a requirement of survival to the date of distribution, class gifts of future interests to 'heirs', 'next of kin', and 'issue' seem strongly to suggest that the persons who take are required to survive the designated ancestor." *Id.* at 22.

The grantor herein has made his intent abundantly clear. The appropriate rules of construction support that intent, to the extent any construction is needed. Statutory and case law support the result that is reached from simply following the language used by the grantor. Ms. Baskin's late husband was, after the grant and until his death, a potential remainderman because he was a member of the class of Martha Wilson's bodily heirs. He died before the termination of the

---

[22]This conclusion is explained:

> A statute that prescribes the rules applicable to intestate takers of property operates by ascertaining the takers thereunder at the moment of the death of the person who died intestate. Such takers are the 'heirs' of such person. If the statute were to operate to ascertain the takers thereunder at a time prior to or subsequent to the death of the person who died intestate, the takers would not be the true 'heirs' of such person but would be an artificial group.

RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) § 29.4 com. a.

life estate; any interest he had in the remainder was extinguished at that time. Consequently, he had no interest which could be transferred through his estate.

## V. The Class Gift Statute

The trial court determined that the statute applicable to class gifts answered the question of whether Kenneth Wilson possessed an interest which was transmissible to his widow through his estate. That statute provides:

> Where a bequest, devise, conveyance, transfer or gift is made to a class of persons subject to the fluctuation by increase or diminution of its number in consequence of future births or deaths, and the time or payment, distribution, vestiture or enjoyment is fixed at a subsequent period or on the happening of a future event, and any member of such class shall die before the arrival of such period or the happening of such event, and shall have issue surviving when such period arrives or such event happens, such issue shall take the share of the property which the member so dying would take if living, unless a clear intention to the contrary is manifested by the will, deed or other instrument.

Tenn. Code Ann. § 32-3-104 (1998).

This statute, originally adopted in 1927, was a legislative response to judicial application of Tennessee's common law class gift doctrine. While the descriptions of the purposes and effects of the statute are many and often irreconcilable, it is generally considered to have been intended to relieve the harsh effect of the common law doctrine, at least in some instances, by allowing the surviving issue of a class member who dies before the time the class would have come into possession of the gift to take that class member's share. The result required under the common law doctrine was that the gift to a nonsurviving member of the class would lapse, depriving even his children of any interest.[23]

The word "'issue' . . . includes all persons who have descended from a common ancestor; unless controlled by the context, it means lineal descendants." ROBINSON & MOBLEY, *supra*, § 461.

---

[23]The class doctrine first appeared as a judicially created rule of construction in *Satterfield v. Mayes*, 30 Tenn. 58 (1849). In that case the will bequeathed property to M during her natural life and the remainder to M's daughters. The court established the rule which became the Tennessee Class Doctrine:

> The rule is well settled that, where a bequest is made to a class of persons, subject to fluctuation by increase or diminution of its number, in consequence of future births or death, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event; the entire interest vests in such persons, only, as at that time, fall within the description of persons, constituting such class.

*Id*. at 59.

18

The "issue of the decedent" are, unless otherwise limited, all the direct, lineal descendants of the deceased. *Burdick v. Gilpin*, 205 Tenn. 94, 109, 325 S.W.2d 547, 554 (1959); *Third National Bank in Nashville v. Noel*, 183 Tenn. 349, 358, 192 S.W.2d 825, 828 (1946); and *White v. Kane*, 178 Tenn. 469, 475, 159 S.W.2d 92, 94-95 (1942) (construction of the antilapse statute). The Tennessee Supreme Court has also noted that the term can be broad enough to cover descendants of every degree. *Lea v. Lea*, 145 Tenn. 693, 697, 237 S.W. 59, 60 (1922).

*Carter v. Hutchison*, 707 S.W.2d 533, 538 (Tenn. Ct. App. 1985).

The statute would act in this situation to save Kenneth Wilson's portion of the remainder if any of his lineal descendants are alive at the termination of the life estate. That portion, however, would pass to those surviving lineal descendants. Ms. Baskin is not a lineal descendant of her late husband. We think the trial court correctly interpreted the statute.

In *Martindale v. Union Planters Nat'l Bank*, No. 02A01-9502-CH-00030, 1996 WL 266650 (Tenn. Ct. App. May 21, 1996) (no Tenn. R. App. P. 11 application filed), this court applied the class gift statute. The will in question created a trust for the benefit of the testator's wife for her life, with the trust estate to be distributed upon the death of his wife equally to his sister, Wilma Cox, and his nephew, Carl Van Kenner, and:

In the event my said sister or nephew shall predecease the date of distribution leaving children surviving, that share which would have gone to my sister or nephew had she or he survived, shall go to the children of said deceased children or nephew in equal portions . . . .

*Martindale*, 1996 WL 266650 at *4.

This court determined that the testamentary gift to the children of the testator's sister and nephew was a gift to a class and, therefore, Tenn. Code Ann. § 32-3-104 applied. The court described the statute:

This statute modified the Tennessee class doctrine by providing that where a bequest is made to a class of persons that is subject to fluctuation by either increase or decrease of its number, and a class member dies before the time established for distribution, the issue of the deceased class member will take that member's share unless a clear intention to the contrary is evinced by the language of the will.

*Id.* at * 3.[24]

---

[24]We note that Ms. Baskin's theory that her husband had a one-third interest in the remainder presupposes that William Wilson, Martha Wilson's other son, also took a vested, transmissible one-third interest, even though he

(continued...)

The dispute in *Martindale* involved the disposition of the share given to Wilma Cox. Wilma had three children, one of whom, Duane, predeceased the testator and left two children. When Wilma died, before the life tenant, she was survived by Duane's two siblings, who disputed that Duane's children had an interest in the gift. The court concluded that, pursuant to the statute, the portion of the estate which would have gone to Wilma's son Duane had he not predeceased the life tenant went to his surviving children, unless a clear intent to the contrary was manifested by the will. The court found no such clear contrary intent.

A similar statute, but applicable to immediate rather than postponed gifts, Tenn. Code Ann. § 32-3-103(3) states that if a devisee or legatee, or member of such class, of an immediate gift dies before the testator leaving issue surviving the testator, such issue shall take the share of the deceased devisee, legatee, or class member, unless a different disposition is otherwise required by the will. In *White v. Kane*, 178 Tenn. 469, 472-73, 159 S.W.2d 92, 95 (1942), the Supreme Court interpreted this provision (then Code Section 8134) as intending to save an immediate gift to a person who predeceased the testator or donor by directing that the deceased devisee's interest would go to his issue who survived the testator. "The primary purpose of these acts was to prevent this lapse of the devise or legacy, and to save it to the representative of the deceased legatee." *Brundidge v. Alexander*, 547 S.W. 2d 232, 234 (Tenn. 1976) (quoting *White*, 178 Tenn. at 474, 159 S.W.2d at 94.) This antilapse statute is in furtherance of the presumed intent of the testator, and under it "the issue that survives a deceased devisee or legatee takes as the substituted legatee of the deceased ancestor just as if their names had been inserted in the will by the testatrix itself." *Wiess v. Broadway Nat'l Bank*, 204 Tenn. 563, 573, 322 S.W.2d 427, 432 (1959); *see also Brundidge*, 547 S.W.2d at 233 (quoting passage with approval). The statute is intended to safeguard the interests of those who take under a deceased legatee, not to benefit the deceased legatee. *Id.* This court has recognized that this statute would not apply where the testator's clear intent is that the gift be conditioned upon survival to the death of the testator. *In re Estate of Harper*, No. M2000-00553-COA-R3-CV, 2000 WL 1100206, at * 3 (Aug. 8, 2000) (no Tenn. R. App. P. 11 application filed). Thus, judicial interpretation of the similarly worded antilapse statute on immediate gifts is consistent with the *Martindale* court's interpretation of the class gift statute.

In the case before us, of course, the result of application of the class gift statute, Tenn. Code Ann. § 32-3-104 (1998), as interpreted as discussed above, is consistent with the language of the grant and with this court's application of the law to the grant.[25] Although the grantor clearly intended that takers of the remainder must survive to the termination of the life estate, he chose language which solved the problem that the statute was designed to correct. By using a multigenerational term and incorporating the law of intestate succession, the grantor protected the

_____

[24](...continued)
predeceased the life tenant and left no surviving lineal descendants. The class gift statute does not operate to save William's interest because he had no surviving issue. The cases using that statute to find vested interests in some class gifts, discussed later in this opinion, would also appear not to apply to William's interest.

[25]We need not address any issue which may be created by the grant's use of heirs of the body and its reference to the laws of descent and distribution and the statute's use of the term issue.

interest of lineal descendants. The statute does not, however, support Ms. Baskin's interest in the property and dictates a contrary result.

## VI. The Statute, the Class Doctrine, and Vested Interests

Tennessee Code Annotated § 32-3-104 has been interpreted as having a greater effect than our discussion above or its plain language would indicate. Although our courts have been less than consistent in their assessment of its effect, a line of decisional authority developed that forms the basis for Ms. Baskin's claim that her husband possessed a vested, transmissible interest. We begin with the first of the opinions in that line of authority.

*Harris v. France*, 33 Tenn. App. 333, 232 S.W.2d 64 (1950) (*cert. denied* 1950), involved a challenge to a testamentary trust which provided income to the children of testator's named nieces and nephews, with the trust to cease and the corpus to be distributed to those children when the youngest reached the age of thirty. Because the case involved the Rule Against Perpetuities, the court was required to determine when the children's interests vested. It applied an exception to the common law class doctrine available when the court can find "any slight indication" of an intent on the part of the testator to create separate and severable interests rather than to vest the interest in the class unit. *Id.* 33 Tenn. App. at 349, 232 S.W.2d at 71. The court found such intent to individualize the gifts, and held therefore that although the devise was to a class the members took several interests, each having a vested equitable interest which was transmissible. *Id.* 33 Tenn. App. at 353-54, 232 S.W.2d at 73. The court did not apply the common law doctrine.

The *Harris* court's discussion of the common law class doctrine and the statute is important. The court assumed that, absent some exception to the doctrine's application, an individual's interest in a class gift would not vest until the time for distribution of the property. "Under this doctrine the individuals composing the class have no estate prior to the period for distribution but only an expectancy. The mere fact that the time of payment or distribution is postponed implies a condition precedent of survivorship." *Id.* 33 Tenn. App. at 345, 232 S.W.2d at 69 (citations omitted). The court stated that because the doctrine as applied was contrary to the common law and the weight of authority, and because it had been applied to defeat the intent of the testator many times, our courts had become increasingly reluctant to apply it, doing so "only where it was impossible to discover anything in the instrument justifying a refusal to do so." *Id.* (citations omitted).

> In 1927 the legislature took cognizance of the situation and passed a statute embodying a rule of construction designed to avoid the defeat of the testator's intention by the application of the class doctrine as it had theretofore been applied in Satterfield v. Mayes . . . and the cases which followed the rule there announced.

> Before the statute, the mere fact without more that the time of payment or distribution was postponed, required the conclusion that survivorship was by implication a condition precedent to the vesting of separate estates in the individual members of the class.

The statute forbids such an implication and the fact that the time of distribution is postponed is reduced to a circumstance to be considered along with the other circumstances and provisions of the will in determining whether there is a clear manifestation of an intention that the entire interest vest in such persons only as fall within the description of the persons constituting the class at the time fixed for payment or distribution of the estate. In other words, by virtue of the statute, where applicable, the rule now is that notwithstanding that the time of payment or distribution of the estate is fixed at a subsequent period, or upon the happening of a future event, the individual members of the class will take vested transmissible interest unless the will, considered as a whole in light of all the circumstances, manifests a clear intention to the contrary.

*Harris*, 33 Tenn. App. at 347-48, 232 S.W.2d at 69-70 (citations omitted).

Thus, according to the *Harris* court, the problem with the Tennessee Class Doctrine was that it had come to be applied formulaically to all postponed gifts to a class regardless of the description of the class or contrary grantor intent. Commentators generally agree with that description.

If there is a justifiable criticism with regard to the class doctrine in Tennessee, it is that it came to be applied mechanically as a rule of law, and indeed, as a rule of property which could only be changed by the legislature. . . .

The doctrine takes a definite position on all class gifts of future interests, recognizing no distinction between such class designations as "children," "grandchildren," "nephews and nieces," and the like, which do not inherently suggest a requirement of survival, and such class designations as "heirs," "next of kin," "issue," and the like, which seem to suggest inherently a requirement of surviving at least the designated ancestor of such groups. . . . In class gifts to children, grandchildren, nephews and nieces, the doctrine has been applied mechanically to disinherit successors of a deceased child without any effort to analyze the limitation and consider the probable intent of the donor. . . .

Trautman, *supra*, 20 VAND. L. REV at 23-24.

Although *Harris* became the foundation for the later cases finding vested transmissible interests, we note that one year after the Court of Appeals issued *Harris*, the Supreme Court decided *Denison v. Jowers*, 192 Tenn. 356, 241 S.W.2d 427 (1951), in which it applied the common law class doctrine because the will granted the remainder to testator's siblings at the death of the life tenant, finding the phrase "at her death" indicated the testator's intent that the members of the class should be determined at the life tenant's death. *Id*. 192 Tenn. at 358, 241 S.W.2d at 428. The Court recognized that the class doctrine "is often a hard rule" and that courts would seize even slight grounds to find a devise to individuals rather than to the class in order to avoid application of the rule. Finding no such language in the devise and feeling compelled to follow prior decisions, the court applied the common law doctrine.

22

The Court's observation of the effect of the 1927 statute was that "the Legislature did no more than enact a rule which this Court had eagerly followed without legislation." *Id*. 192 Tenn. at 360, 241 S.W.2d at 428. This holding was later criticized by the Tennessee Supreme Court.[26]

The next case in the line relied upon by Ms. Baskin is *Karsch v. Atkins*, 203 Tenn. 350, 313 S.W.2d 253 (1958), and indeed this case is the source of the language which is used in subsequent opinions to apply the statute to create vested interests. The *Karsch* case was a tax case and the issue was the correct exemption to the gift tax to be applied to a gift of money into a trust established for the grantor's daughter for life then for the benefit of the daughter's children. At the time the gift was made, there was only one such child, a Class B beneficiary; the grantor wanted the benefit of the greater exemption available for Class A beneficiaries. The Court resorted, in part, to the class gift statute and stated that by virtue of that statute:

> [T]he rule now is that notwithstanding that the time of payment or distribution of the estate is fixed at a subsequent period, or upon the happening of a future event, the individual members of the class will take vested transmissible interest unless the will, considered as a whole in light of all the circumstances, manifests a clear intention to the contrary. Thus it is that the remainder in the instant case is unquestionably vested so that it will descend to the donee's children just as any other vested interest would.
>
> . . . .
>
> This statute contains in its concluding sentence a recognition that a remainder to a class can be construed as contingent. It seems to us though from the language of this statute that an intention to make the remainder contingent must be more or less expressly stated. As we see it the rule should be, in view of this statute, that the estate will be treated as vested unless the contrary is expressly provided for in the will. This is what the statute says – and we must apply it as it reads.

*Karsch*, 203 Tenn. at 354-55, 313 S.W.2d at 255.

Thus, from *Denison* in 1951 to *Karsch* in 1958, the Supreme Court apparently changed its view of the class gift statute from accomplishing nothing different from what the courts had been doing to effecting a new rule regarding vesting of interests which was to be applied almost presumptively.

In its opinion in *Karsch*, the Court did not address *Harris* and offered no explanation for its conclusion regarding the statute. The basis for the court's interpretation of the statute is unclear because by its plain language the statute does not address vesting and does not provide for transfer of a deceased class member's interest during his lifetime by sale or gift or at his death by will. Such

---

[26] *See* order on the Petition to Rehear in *Walker v. Applebury*, 218 Tenn. 91, 105-06, 400 S.W.2d 865, 870-71 (1965).

a transfer could defeat the interest of surviving issue, a result which appears contrary to the statute.[27] A different interpretation of the statute was given in the next case to address the issue, *Wilson v. Smith*, 47 Tenn. App. 194, 337 S.W.2d 456 (1960). Without referencing the *Karsch* decision, the *Wilson* court stated:

> Our construction of this statute is that, without abolishing the class doctrine rule, it merely adds to membership in the class entitled to take, at the falling in of the life estate or happening of other future event specified, the then surviving issue of anyone who would have been a member of the class if he or she had survived until that time.

*Wilson*, 47 Tenn. App. at 206, 337 S.W.2d at 461.[28]

In *Wilson* the testator devised his real property to his wife in life estate with the remainder to be "equally divided between my brother and sisters, and the children of any deceased brother or sister." This court held that the common law "Class Doctrine," as applied or described in a long line of cases, including *Harris* and *Denison*, applied and that the interests of the members of the class, as individuals, could not be definitely ascertained until the death of the life tenant. Those interests were, therefore, contingent upon survival to the death of the life tenant. The court further held that deeds, wills, and other attempted grants executed by various descendants of the testator's siblings were ineffectual because those descendants held no vested, transmissible interest which they could convey.[29]

The Supreme Court apparently was not impressed with the *Wilson* court's interpretation of the statute. In *Moulton v. Dawson*, 215 Tenn. 184, 384 S.W.2d 233 (1964), although the Court held that the class gift statute did not apply because the will in question pre-dated its passage, it nonetheless discussed prior interpretations of the statute, stating that *Karsch* and *Harris* clearly enunciated the change in the law brought about by the statute. With regard to *Wilson v. Smith*, the

---

[27]Professor Trautman suggests that the statute "introduces a 'lapse' concept into the problem of survival in an effective gift of a future interest to a class, rather than stressing the transmissibility of the deceased class member's interest. Suppose the will of the deceased class member made a gift of his interest to someone other than his issue?" Trautman, *supra*, 20 VAND. L. REV at 30-31.

[28]We note that the *Wilson* court's construction is similar to that of the court in *Martindale v. Union Planters National Bank*, 1996 WL 266650, discussed earlier.

[29]Finding this conclusion a necessary consequence of the class doctrine statute, the court stated:

> In Nichols v. Guthrie, 109 Tenn. 535, 73 S.W.107; Rinks v. Gordon, 160 Tenn. 345, 24 S.W.2d 896, and Felts v. Felts, 188 Tenn. 404, 219 S.W.2d 903, attempted conveyances, by will or by deed, of those who would have inherited if they had survived the life tenant and qualified as members of the class were designated, were held ineffectual; and, in Hobson v. Hobson, 184 Tenn. 484, 201 S.W.2d 659, such conveyance by one of the members of the class who did survive the life tenant, executed before the death of the life tenant, was held good, but solely on the principle of estoppel by deed.

*Wilson*, 47 Tenn. App. at 203, 337 S.W.2d at 460.

court noted that the Court of Appeals did not refer to the *Karsch* case which had preceded the *Wilson* case by two years and that the Supreme Court had not reviewed *Wilson* since no petition for certiorari was filed.[30]

After comparing the language in grants involved in various other cases applying the common law class doctrine, the court determined that application of the doctrine was appropriate in *Moulton*. The will in Moulton gave the testator's property to his wife for her life or widowhood, then to his children and "if any children should die leaving children, then such child or children are to take the share their parent would have taken if living." Interesting for its application to the case before us, the lawsuit in *Moulton* was initiated because of a dispute over the distribution of proceeds from a condemnation. The testator's two children alive at the initiation of the lawsuit sought a portion of the proceeds to be shared with their mother, the life tenant, who was still alive. The trial court ruled that the children held vested interests and divided the proceeds proportionately, apparently based on the life tenant's age and life expectancy, among the three parties. The Court of Appeals affirmed the trial court's holding that the remainder was vested based upon *Harris* and *Karsch*.

Because the grant pre-dated the statute, the Supreme Court reversed and specifically applied the common law doctrine, holding that "the remainder interest in this property is vested in 'the described class, as a class, and not individually in the persons composing such a class,'" *Moulton*, 215 Tenn. at 193, 384 S.W.2d at 237 (quoting *Satterfield v. Mayes*). Therefore, the devisees of the remainder could not be determined until the death or remarriage of the life tenant, and the children were not entitled to distribution of any of the condemnation proceeds at that time.

*Walker v. Applebury*, decided a few years later has been cited by the appellant for the proposition that Kenneth Wilson's interest was both vested and transmissible and, consequently, passed through his estate on his death intestate. In *Walker*, the testator granted her husband a life estate in two pieces of real property with a remainder to a class described in various provisions of the will as "the Applebury's," "the Applebury kin" or the "Applebury heirs." The testatrix was a member of the Applebury family, and the land in question had come to her through inheritance from that family; hence her desire to return ownership of the land to her family.

Among the "Applebury kin" that survived the testator was a cousin, Marvin Applebury, who died prior to the death of the life tenant. Marvin Applebury's widow and adopted son brought suit to recover Marvin's share of the devised property on the theory he had a vested interest which passed through his estate to them. The suit was brought after the death of the life tenant.

The Tennessee Supreme Court stated that the question before it was whether the devises were controlled by the "Tennessee Class Doctrine" enunciated in *Satterfield v. Mayes*. The Court described that doctrine as having long troubled the bench and bar of the state. The Court examined the 1927 statute, beginning with its caption:

---

[30] In a later decision, the Supreme Court stated that any discussion of the statute in *Moulton* was dictum. *Walker*, 218 Tenn. at 105-06, 400 S.W.2d at 870.

"An Act to so change what is known as 'The Class Doctrine' concerning property to be paid or distributed or divided among members of a fluctuating class at a future time or upon the happening of a future event, that the issue of any member of such class dying would take if living at such future time or at the happening of such future event."

*Walker*, 218 Tenn. at 96, 400 S.W.2d at 867 (citation omitted).

The Court found that the legislature had intended to make some changes in the class doctrine as it had been applied by the courts, but that "just what changes" the statute accomplished was a decision for the courts. The Court quoted from a number of articles and treatises criticizing the common law doctrine and largely concluding that the statute abolished the doctrine, at least to the extent that the doctrine was contrary to the majority rule, and established "the rules of judicial construction generally applicable in Tennessee and in other common law jurisdictions." *Id*. 218 Tenn. at 98, 400 S.W.2d at 869 (quoting Herman L. Trautman, *Decedents, Estates, Trusts and Future Interest - 1959 Survey*, 12 VAND. L. REV. 1157, 1175 (1959)).

Finding that the case was subject to the 1927 statute,[31] the Court concluded that the case would be decided by applying the following rule:

That the class took a vested transmissible interest in this estate in remainder upon the death of the Testatrix unless, (1) the will taken as a whole, in light of all the circumstances, requires the remainder to remain contingent, and not vest during the life of the life tenant, in order to carry out the clear intention of the Testatrix, or (2) there is language in the will expressly providing the remainder not vest during the life of the life tenant.

*Walker*, 218 Tenn. at 101, 400 S.W.2d at 869.

After examining the will, the Court found the testatrix's intent was that the land return from whence it came, to the Applebury family, and that furtherance of that intent did not require that the remainder remain contingent during the life tenancy in order to carry out this clear intent. Therefore, the court concluded that Marvin took a vested transmissible interest in the remainder upon the death of the testatrix.

---

[31] At least one commentator has questioned the court's holding that the statute applied, because the statute on its face applies only where a deceased member of the class has issue surviving to the date of distribution. Marvin Walker had no such issue surviving, and although he was survived by an adopted son, the court made it clear that it was not deciding the case on the theory that the adopted son qualified as issue. Trautman, *supra,* 20 VAND. L. REV at 30. Nonetheless, the court in *Walker* based its new rule of construction on the statute.

A "forthright, strong and sometimes testy petition to rehear" was filed.[32] In its response, the Court found that the fact that the appellant, Marvin's son, was adopted was irrelevant. "Royce Marcus Applebury an adoptive son of Marvin Applebury, by virtue of T.C.A. sec. 36-126 would inherit from his adoptive father and not the testatrix." *Id.* 218 Tenn. at 103, 400 S.W.2d at 870. Thus, the Court made it clear that Marvin had a vested interest which passed through his estate and that his son's interest came from his interest in his father's estate, not from the original grant in the will. This is, in essence, Ms. Baskin's argument herein.

The conclusion that Marvin held a vested interest transmissible through his estate was based upon a determination that identification of those persons in the class of Applebury kin or heirs was to be made at the death of the testatrix ("the class took . . . upon the death of the Testatrix"). The Appelbury heirs were the testatrix's heirs, not the life tenant's.[33] Thus, the result in *Walker* is not inconsistent with our conclusions stated elsewhere regarding Tennessee law. It is well recognized that there is a distinction between a remainder to the heirs of the grantor or testator as opposed to the heirs of the life tenant. The grantor or testator has heirs upon his death. A gift to the heirs of a named person is interpreted as an intent to have the property distributed as the law would distribute it if the named person died intestate. While the normal time for applying the statute of descent and distribution would be on the death of the named person, the grantor may indicate an intent to have it applied (to determine the actual heirs) at an earlier or later time. SIMES & SMITH, *supra,* §§ 732

---

[32]The petition had asked the court to reconsider its holding in light of a number of cases since 1927 applying the doctrine as set out in *Satterfield*. After considering the listed cases individually, the court summarized them:

> The cases since the Act of 1927 have been looked at and discussed. In only one instance was the will probated after 1927 and that was in the case of *Denison v. Jowers*, supra. In that case the court states why a contingent remainder is created and then goes one step further to say that the statute did not do anything. T.C.A. sec. 32-305 recognizes, of course, that a testator may expressly create a contingent remainder by appropriate words. Since 1927 we have these important cases: *Jennings v. Jennings*, supra, stating that the statute is prospective; *Denison v. Jowers*, supra stating that the statute did not change anything; *Karsch v. Atkins* . . . a tax case which held the statute was applicable and vested transmissible interests were created; and *Moulton v. Dawson* . . . holding, by dictum, that the legislature did what it said it was going to do in 1927 and changed the class doctrine. This case stated that the class doctrine was abolished and T.C.A. sec. 32-305 was applicable for all wills probated after 1927. This case, just as the commentators and authors of law review articles, severely criticized the *Denison* case. The case at bar is in a logical sequence with all the above mentioned cases other than *Denison v. Jowers*, supra.

*Walker*, 218 Tenn. at 105-106, 400 S.W.2d at 871.

[33]In the case before us, the class is the heirs of the body of the life tenant. As explained earlier, the identity of heirs cannot be determined until the death of the person to whom they are heirs. Because the identity of the testatrix's heirs or kin could be determined as of her death in *Walker,* the share of each qualifying member of the class could be determined. Because the life tenant had died prior to the lawsuit, as the court stated, the land had been sold and the amount Marvin would have taken was not in dispute in *Walker*. Until the death of the life tenant herein, the number of members of the class entitled to the remainder cannot be determined and, consequently, the size of each member's share cannot be determined.

27

-34; *see also* RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative transfers) § 29.4 (in the absence of indication of different intent, the statute governing intestate succession is to be applied as of the death of the person whose heirs are the named beneficiaries). The court in *Walker* applied the general rule, using the death of the testatrix as the date upon which to identify her heirs.

Tennessee courts have generally found that the time for determining who is an heir depends upon the court's interpretation of the testator's or grantor's intent. *Burdick*, 205 Tenn. at 94, 325 S.W.2d at 547 (construing language of a will as directing when the corpus of trust was to be divided, on the death of the testator's daughter Eleanor, and to whom it was to be divided, members of the beneficiary class who were living at the termination of the trust); *Rinks*, 160 Tenn. at 345, 24 S.W.2d at 896 (grant of life estate to sister and at her death to other brothers and sisters or their heirs who may be living at the death of life tenant's sister indicated intent that only those persons living at the death of life tenant would share and that the determination of the persons by whom the remainder estate should be enjoyed would be made as of that date); *Forrest v. Porch*, 100 Tenn. 391, 45 S.W. 676 (1898) (remainder, after life estate to wife, to testator's heirs at law was contingent because testator obviously intended the land to be divided at the death of his widow among such persons who at that time were his heirs at law). Thus, the *Walker* court's emphasis on the intent of the testatrix is also consistent with established legal principles other than the common law class doctrine or the statute.

In *Nicholson v. Nicholson*, 496 S.W.2d 477 (Tenn. 1973), the Tennessee Supreme Court was called upon to determine the rights of certain heirs of the testator who left stock in a life estate to his wife, the remainder to go to two named individuals, Ms. Weems and Mr. Wright. The will provided that if the named individuals predeceased the testator's wife, the stock was to go to the testator's heirs at law. The two named individuals predeceased the life tenant. The children of the testator's nephew, George, brought the action. George was alive when the testator died and was at that time one of his heirs at law. He later sold his interest in the stock to the company which had issued it. George outlived Ms. Weems and Mr. Wright, but predeceased the life tenant. His children claimed that his interest had not vested, that they were members of the class of heirs at law at the death of the life tenant, and that George's attempted assignment of his interest could not deprive them of their interests.

Stating that the question to be answered was "at what time the testator's heirs are to be determined," *Id.* 496 S.W.2d at 478, the Court found "the testator wanted to give his stock to a fluctuating class of heirs, the interest in the stock to vest in them at the death of the last remainderman, Wright, and actual possession to follow the death of the life tenant, testator's widow." *Id.* 496 S.W.2d at 480. Consequently, the court affirmed the trial court's holding in favor of the company who had purchased George's stock. In effect, the Court ruled that George's interest vested at the time of the death of Mr. Wright and his conveyance to the company was valid.

Again, this result is not inconsistent with our conclusions elsewhere in this opinion. The condition precedent to the class of heirs at law taking the remainder was removed with the death of Ms. Weems and Mr. Wright prior to the death of the life tenant. At that point, it was clear that the

28

class would get possession of the remainder at the end of the life tenancy. Further, as discussed above, the fact that the remainder was to go to the testator's heirs at law rather than the heirs of the life tenant brings the case within the general rule that in such situations, the question to be answered, as the court in *Nicholson* recognized, is at what point in time the heirs are to be ascertained. That question is to be answered by the terms of the grant.

The *Nicholson* court relied on the class gift statute and prior judicial interpretation of the effect of the statute:

> Prior to the enactment of this statute, Tennessee courts supported the so-called "Tennessee Class Doctrine," which held that remainder gifts to a fluctuating class of persons remained contingent until the time set in the will for distribution or payment of the gift. That doctrine has been significantly modified by T.C.A. § 32–305 [now 32-3-104]. Tennessee case law since passage of the statute in 1929 [sic] has held that such a class takes a vested, transmissible interest in the remainder, unless the will unquestionably discloses testator's intention that the interest remain contingent until the date of distribution. Harris v. France, 33 Tenn. App. 333, 232 S.W.2d 64 (1950); Karsch v. Atkins, 203 Tenn. App. 350, 313 S.W.2d 253 (1958); Walker v. Applebury, 218 Tenn. 91, 400 S.W.2d 865 (1965).

*Nicholson*, 496 S.W.2d at 479. The court adopted and applied the test established in *Walker*: the interests are vested unless the grant, taken as a whole, required the remainder to remain contingent during the life tenancy.

George's children argued that the language of the will that the stock "be distributed to my heirs at law at the date of death of my said wife" indicated an intent that the stock vest only in those persons who are his heirs at the death of his wife and that the interest remain contingent throughout the life tenancy. The Court, however, found that the language only set the time for distribution, not for vesting. In any event, the Court concluded that, at best, the language in the will implied two different results with equal force and Tennessee law favored vested interests. Accordingly, the Court found that George had a vested interest which he validly conveyed to the company. Again, however, the intent of the testator was the determining factor, and the general presumption that the death of the person whose heirs are the beneficiaries is the date defining the class was applied.

Our review of these cases convinces us that we are not compelled by them to decide Kenneth Wilson died possessed of a vested, transmissible interest in one-third of the remainder, even if the alternative contingent remainder to Will Jordan's next of kin did not exist.[34] First, none of the cases

---

[34]Despite the subtlety of our language herein, it may have become apparent that we have questions about the reasoning behind the Supreme Court's interpretation of the class gift statute first announced in *Karsch*. That interpretation seems inconsistent with the language of the statute and with the Court's interpretation of a similar antilapse statute as discussed in *Brundidge*, 547 S.W.2d at 234, another 1976 opinion. The potential disparity between the *Karsch* interpretation of the effect of the statute and the language of the statute is made clear by Ms. Baskin's claim

(continued...)

relied upon by Ms. Baskin involves a gift to heirs of the body of the life tenant. The classes in *Harris* and *Karsch* are children. The classes in *Walker* and *Nicholson* are multigenerational classes, but are the heirs of the testator or grantor, not the life tenant. *Bittikofer*, decided after *Nicholson*, held that a postponed gift of a remainder to heirs of the body of the life tenant is contingent, and its restatement of well-settled law has not been altered.

Second, the *Karsch* through *Nicholson* line of cases establish a rule of construction which can be overcome by the clear intent of the grantor. Otherwise, application of the court's interpretation of the statute as a rule of law rather than a rule of construction would lead to the same problems caused by earlier application of the common law rule. It is well established in the law generally, and in Tennessee particularly, that the intent of the grantor governs because the courts will recognize the right of a individual to dispose of her property as she likes. In the case before us, the intent of Will Jordan is that those persons who are his daughter's bodily heirs alive at her death, if any, will share ownership of the farm. This intent contravenes any rule of construction which would vest interest in a member of the class who predeceases Martha Jordan.

Even in the absence of the alternative contingent remainder to the grantor's next-of kin, we conclude that Kenneth Wilson would not at his death have had a vested interest in the remainder which was transmissible through his estate. As a member of the class of heirs of the body of Martha Wilson, his interest was contingent upon his survival to the termination of the life tenancy. Whether his interest during his life was properly classified as a contingent remainder, remainder subject to condition (of survival to end of life estate), or a remainder subject to complete defeasance (upon death before end of life estate), the result is the same.

This conclusion is supported by Tennessee law, which is consistent with the Restatement's resolution of the issue.

> If a gift is made to a class described as the "issue" or "descendants" of a designated person, or by a similar multigenerational class gift term, in the absence of additional language or circumstances that indicate otherwise, (1) A class member must survive

---

[34](...continued)

herein. If her deceased husband had a vested, transmissible interest as she claims the *Karsch* line of cases mandates, he could have sold it to a third party, thereby depriving his daughter or other issue of any interest. This result seems entirely contrary to the language of the statute which saves the interest of a deceased class member, only if he has issue surviving, and allows only the surviving issue to take that share. The requirement that the statute apply only if the deceased class member have issue surviving would indicate that the question of whether the statute applies at all would have to be made after the event triggering distribution.

Nonetheless, we are aware that any reservations we may have about the broad statements in *Karsch* and its progeny are not a basis upon which we can refuse to follow these holdings by the Supreme Court. We are well aware that we are not at liberty to depart from precedent set by the Supreme Court. *Estate of Schultz v. Munford*, *Inc.*, 605 S.W.2d 37, 39 (Tenn. Ct. App. 1983). We do not do so, but find the conclusion urged upon us by Ms. Baskin from those cases inapplicable because of the language of the grant in the case before us.

to the date of distribution in order to share in the gift; and (2) such class member in order to share in the gift must have no living ancestor who is a class member.

RESTATEMENT (SECOND) OF THE LAW OF PROPERTY (Donative Transfers) §28.2.

## VII. Conclusion

Under the language of the deed, at the death of the life tenant, the remainder passes to one of two classes. If, at that time, there are no lineal descendants of Martha Wilson alive to take, the remainder passes to the grantor's next of kin. If when the life tenant dies she leaves children or representatives of children, the class of heirs of her body will take the remainder. Those individuals meeting the definition of heirs of Martha Wilson's body who are alive at that time will share in the remainder according to the terms of the statute on descent and distribution. Until the termination of the life estate, no potential member of either class has a vested, transmissible interest in any specific portion of the remainder.

With regard to the claims raised herein by Cathey Baskin, she is not entitled to inherit directly under Will Jordan's deed because she is neither an heir of Martha Jordan Wilson's body nor a next of kin of Will Jordan. Ms. Baskin cannot be an heir of Martha Jordan Wilson's body because she is not a lineal descendant. Ms. Baskin cannot be Will Jordan's next of kin because she is not his blood relative.

Consequently, Cathey Baskin's claim must necessarily be through her deceased husband, Kenneth D. Wilson, who could have been an heir of Martha Jordan Wilson's body. However, Kenneth D. Wilson did not acquire a vested, transmissible interest in the property upon the grant by Will Jordan for two reasons. First and foremost, Will Jordan could not have intended the interests of the heirs of Martha Jordan Wilson's body to be vested during her lifetime because he included an alternative bequest should she die without surviving heirs of the body that is inconsistent with vesting. Second, Kenneth D. Wilson was not an heir of Martha Jordan Wilson's body because he predeceased her. The heirs of Martha Jordan Wilson's body include her multigenerational, lineal descendants. The members of the class of heirs of Martha Jordan Wilson's body cannot be determined until her death, and a person must survive Martha Jordan Wilson to be an heir of her body.

Even though Kenneth D. Wilson predeceased his mother, Tenn. Code Ann. § 32-2-104 (1998) preserves his interest to his surviving issue, Diane Wilson McCord,[35] but not to his widow. While Diane Wilson McCord (Cathey Baskin's daughter) may eventually qualify as a surviving issue of Kenneth D. Wilson if she survives her grandmother, Cathey Baskin will never qualify as a surviving issue of her late husband.

---

[35]In addition to being her father's issue, Diane Wilson McCord is a member of the grantee class of heirs of Martha Wilson's body. If she survives Martha Wilson, Diane Wilson McCord will take a portion of the remainder under the terms of the grant itself.

Accordingly, we affirm the trial court's determination that Ms. Baskin has no interest in the remainder or in the proceeds from the condemnation. Costs are taxed to Ms. Cathey Baskin.

_____
PATRICIA J. COTTRELL, JUDGE